[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**MAR 28, 2001**
**THOMAS K. KAHN**
**CLERK**

_____

No. 99-15411

_____

D. C. Docket No. 98-01870-CV-T-26C

CHARLES DOUGHTY,

Plaintiff-Appellant,

versus

KENNETH S. APFEL, Commissioner,
Social Security Administration,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(March 28, 2001)**

Before EDMONDSON, CARNES and MARCUS, Circuit Judges.

MARCUS, Circuit Judge:

Charles Doughty appeals the district court's order affirming the Commissioner's denial of his petition for supplemental security income ("SSI") under 42 U.S.C. § 1383, and disability insurance benefits ("DIB") under 42 U.S.C. § 423(a). Doughty was denied benefits pursuant to the Contract with America Advancement Act of 1996 ("CAAA"), Pub. L. No. 104-121, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1997)).[1] The CAAA amended the Social Security Act to preclude the award of benefits when alcoholism or drug addiction is determined to be a contributing factor material to the determination that a claimant is disabled. The CAAA did not directly address, however, whether the claimant or the Commissioner bears the burden of proving whether the claimant would be disabled if he stopped using drugs or alcohol. We hold, as a matter of first impression in this Circuit, that the claimant bears that burden. Because we find that Doughty did not meet that burden, we affirm.

I.

---

[1] Section 423(d)(2)(C) and the regulations found in 20 C.F.R. Part 404 cover applications for disability benefits. SSI applications are covered by identical provisions found at 42 U.S.C. § 1382c(a)(3)(J) and Part 416, respectively. For simplicity, we will refer only to § 423(d)(2)(C) and Part 404 in this opinion.

Doughty applied for SSI and DIB in 1994. In his applications, Doughty alleged that he was disabled as of December 31, 1989, due to anxiety-related disorders. Doughty's applications for both SSI and DIB were denied initially and upon reconsideration. Doughty requested and received a hearing before an Administrative Law Judge ("ALJ").

The ALJ heard Doughty's case on July 29, 1996. Doughty was thirty-nine years old at the time and testified that he had a tenth-grade education. He stated that his past relevant work experience included employment as a baker's assistant, a bakery supervisor, a "tomato grater," and a lubrication technician. Doughty testified that he has not engaged in substantial gainful employment since December 31, 1989.

Doughty explained that he quit his job as a baker because he began experiencing frequent dizzy spells and was afraid that he would injure himself on the job. Although Doughty acknowledged that he had a history of alcohol use, he testified that drinking had never caused him to miss work or to be arrested. Doughty stated that when he consumed alcohol, he would drink one to three beers a day to calm himself down when he experienced anxiety attacks. Doughty said that the anxiety attacks consisted of a racing pulse, dizziness, shortness of breath, and a loss of concentration. Doughty testified that he had not been drinking for a

few months prior to the hearing, and that he had completed a detoxification program. Doughty further stated that he was on a waiting list for admission into a drug and alcohol treatment facility.

Doughty's relevant medical history includes the following facts: Dr. Craig Triguero treated Doughty from February 1988 through September 1994. Doughty's primary complaint was dizziness, but he also complained of shakiness, chest pains, and heart palpitations. Doughty told Dr. Triguero that the had been drinking constantly since the age of eleven and that he was an "admitted alcoholic," despite several attempts at rehabilitation. Dr. Triguero encouraged Doughty to participate in rehabilitation programs such as Alcoholics Anonymous ("AA"), but Dr. Triguero's notes indicate that Doughty never attended AA and sometimes drank twelve to fourteen beers a day. In August 1992, Dr. Triguero noted that Doughty attempted to stop drinking but was only able to refrain from alcohol for a two-week period.

A report from Manatee Glens Alcohol and Drug Service dated April 1, 1993, indicated that Doughty had participated in a twelve-step program and an outpatient detoxification program. The diagnosis ruled out panic disorder with agoraphobia and determined that Doughty suffered from alcohol dependence. Doughty reported experiencing panic attacks and other withdrawal symptoms when he tried, cold

turkey, to stop drinking. The report noted that Doughty was unable to achieve more than a few weeks of sobriety without the assistance of Librium.

Doughty was hospitalized for depression and alcoholism with suicidal ideation in September 1994. Upon examination, Doughty appeared to be alert and oriented, although he was somewhat depressed and had alcohol on his breath. Doughty was placed on psychiatric watch and discharged shortly thereafter.

Dr. David Wood treated Doughty for alcoholism and alcohol detoxification from February 1993 through November 1995. Dr. Wood noted that Doughty's alcoholism seemed to be "fairly consistent" throughout the course of treatment and that, as result of his addiction, Doughty experienced anxiety and tremulousness. Dr. Wood stated that he had observed Doughty sober long enough not to be in withdrawal on only one or two occasions. During those visits, Dr. Wood noted that Doughty appeared to be "entirely normal." Dr. Wood opined that if Doughty were able to abstain from drinking, he would be capable of performing many work-related activities including sitting, standing, walking, lifting, carrying and handling objects, hearing, speaking, and traveling. Finally, Dr. Wood determined that Doughty did not experience any chronic physical impairments that would persist in the absence of alcohol abuse.

Dr. John Super, a clinical psychologist, conducted an evaluation of Doughty in January 1995 at the request of the Office of Disability Determinations. Dr. Super noted that, despite previous attempts at treatment, Doughty was still suffering from alcohol dependence. Doughty reported that he had been arrested for driving under the influence of alcohol when he was eighteen years old. Dr. Super observed that Doughty was alert and did not exhibit any signs of depression. Doughty did, however, report exhibiting situational bouts of anxiety, including palpitations, shakes, tremors, and concentrational deficits. Doughty testified that his daily activities included vacuuming, sweeping, mopping, and doing dishes. He also reported shopping and cooking occasionally, and reading, watching television, and talking on a citizens' band radio for recreation. Dr. Super submitted a mental capacities evaluation form in which he noted that Doughty had a "poor" to "good" ability to make occupational adjustments, a "good" ability to make performance adjustments, and a "fair" ability to make personal-social adjustments.

In November 1995, Doughty was hospitalized again for intermittent chest pains which radiated to his left arm and leg. He admitted to medicating himself with beer. He also reported that he had not taken his prescription medication for several months. Doughty was diagnosed with alcoholism and anxiety, prescribed Xanax, and referred to several alcohol abuse rehabilitation programs.

6

On these facts, the ALJ issued a decision on February 26, 1997, denying benefits. The ALJ found that Doughty had "a severe impairment or combination of impairments which precludes all work activity, namely alcoholism and anxiety resulting therefrom." The ALJ concluded that these impairments, while severe, did not meet or equal the criteria of any of the "listed impairments" found in the applicable regulations. Because Doughty was not presumptively disabled under this list, the ALJ next considered Doughty's subjective statements regarding his impairments and their impact on his ability to work. The ALJ found Doughty's claims that he was unable to work due to his anxiety not to be credible.

The ALJ concluded, however, that Doughty had a significant nonexertional limitation consisting of his inability to concentrate while intoxicated. The ALJ found that this limitation interfered with Doughty's ability to work. The ALJ further determined that Doughty could not perform his past relevant work and that he did not have the transferable skills to perform other work within his residual functional capacity. Therefore, the ALJ concluded that Doughty's alcoholism was disabling and that there were no jobs existing in significant numbers in the national economy that Doughty could perform. Nevertheless, the ALJ denied benefits to Doughty because the medical evidence indicated that Doughty would not be

7

disabled if he stopped using alcohol, thus making Doughty's alcoholism a "material contributing factor" to his disability under to the CAAA.

After the ALJ rendered his decision, Doughty submitted additional medical records from Manatee Glens Corporation Alcohol and Drug Services for consideration by the Appeals Council. This new evidence covered Doughty's outpatient alcohol treatment from September 24, 1994, through September 7, 1997. The AC denied Doughty's request for review, stating that it had considered the new evidence.

Doughty then sought judicial review of the Commissioner's final decision in the district court. Doughty argued, <u>inter alia</u>, that the ALJ had the burden of demonstrating that his alcohol use was a contributing factor material to the determination of disability. He maintained that the ALJ misapplied the CAAA by failing to separate his limitations caused by alcohol use from those caused by other impairments before engaging in the five-step sequential disability determination. Doughty requested that the district court reverse the Commissioner's decision, or in the alternative, remand his case to the Commissioner for further proceedings. The district court upheld the decision of the Commissioner, and Doughty filed a timely appeal.

II.

We review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny. See Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). When, as in this case, the ALJ denies benefits and the AC denies review, we review the ALJ's decision as the Commissioner's final decision. See Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999). The Commissioner's factual findings are conclusive if they are supported by "substantial evidence," consisting of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id.; see also 42 U.S.C. § 405(g).

III.

The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits. See 20 C.F.R. § 404.1512(a). The Commissioner uses a five-step process to determine whether a claimant has met the burden of proving his disability. See 20 C.F.R. § 404.920; Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999), cert. denied, 120 S. Ct. 1723 (2000). In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. See id. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. See id. At step three, if the claimant proves that his impairment

9

meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. See id. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. See id. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work. See id. § 404.920(f)(1).[2]

In the CAAA, Congress amended the Social Security Act to provide that a claimant "shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Pub. L. No. 104-121, § 105(a)(1), (b)(1), 110 Stat. 847, 852, 853 (codified as amended at 42 U.S.C. § 423(d)(2)(C) (1997)). The regulations

---

[2]In practice, the burden temporarily shifts at step five to the Commissioner. See Jones, 190 F.3d at 1228. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. See id. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. See id. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations. See Brown v. Apfel, 192 F.3d 492, 498 (5th Cir. 1999) (quoting Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987) ("The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act")).

implementing § 423(d)(2)(C) provide that once the Commissioner determines a claimant to be disabled and finds medical evidence of drug addiction or alcoholism, the Commissioner then "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535. The key factor in determining whether drug addiction or alcoholism is a contributing factor material to the determination of a disability (the "materiality determination") is whether the claimant would still be found disabled if he stopped using drugs or alcohol. See 20 C.F.R. § 404.1535(b)(1).

In Doughty's case, the ALJ stated:

> Given claimant's residual functional capacity, and the vocational factors of his age, education and past relevant work experience, there are no jobs existing in significant numbers that claimant is capable of performing. Claimant's alcoholism is disabling.

> However, the medical evidence supports a finding that if claimant stopped using alcohol, he would not be disabled. For this reason, alcoholism is a contributing factor material to the determination of claimant's disability, and in accordance with § 105 of Public Law 104-121, which was enacted on March 29, 1996, Mr. Doughty is ineligible for disability benefits under title II of the Act and disability payments under title XVI of the Act.

On appeal, Doughty contends that the Commissioner bears the burden of proving that his alcoholism was a contributing factor material to his disability determination by separating the limitations caused by drug and alcohol abuse before proceeding with a disability determination. Doughty essentially maintains

11

that the CAAA adds a sixth step to the five-step disability determination described above, in which the Commissioner has the burden of showing whether the claimant would still be disabled if he stopped using drugs or alcohol. Doughty further maintains that the Commissioner did not carry that burden. The Commissioner responds that the claimant always bears the burden of proving that he is disabled, and that therefore, Doughty was required to prove that he would be disabled if he stopped using alcohol.

We have not addressed the question of who bears the burden of proof as to the materiality determination under § 423(d)(2)(C). The Fifth Circuit recently addressed the issue and found that the claimant, not the Commissioner, bears that burden.[3] See Brown v. Apfel, 192 F.3d 492 (1999). We agree with the Fifth Circuit's reasoning and hold that in materiality determinations pursuant to 42 U.S.C. § 423(d)(2)(C), the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability

---

[3]In Sousa v. Callahan, 143 F.3d 1240, the Ninth Circuit addressed the burden issue moreobliquely but to the same effect. In Sousa, the court determined the impact of the CAAA on a claim that had been originally filed before the amendment existed. The Ninth Circuit found that the district court had "failed to distinguish between substance abuse contributing to the disability and the disability remaining after the claimant stopped using drugs or alcohol." Sousa, 143 F.3d at 1245. In remanding the case, however, the court indicated that the evidentiary burden rested with the claimant, not with the Commissioner: "Claimants subject to this amendment must be given an opportunity to present evidence as to whether their disability would have remained if they stopped using drugs and alcohol." Id.

determination.  See also Mittlestedt v. Apfel, 204 F.3d 847 (8th Cir. 2000) (citing Brown in regard to the burden issue).

The court in Brown first noted that the overall burden of demonstrating the existence of a disability as defined by the Social Security Act "[u]nquestionably" rests with the claimant.  See 192 F.3d at 498; Brady v. Heckler, 724 F.2d 914, 918 (11th Cir. 1984).  The Brown court reasoned that since the CAAA amends 42 U.S.C. § 1382c(a)(3)(J), which defines disability for the purposes of social security income, that amendment "logically impacts [the claimant's] burden."  192 F.3d at 498.  Second, the regulations at 20 C.F.R. § 416.920 mandate a five-step disability determination, and that any addition of a "sixth step," which Doughty implies should be created, would require those regulations to be so amended -- "something that the CAAA did not do."  Id.  Third, the Fifth Circuit explained that the Commissioner's burden in step five of the disability determination, see supra n.2, "arises only from a judicial construction of the Social Security statute" and that "[a]ny expansion of the burden ought to have a compelling justification or the clear intent of Congress undergirding it," both of which the court found lacking.  Brown, 192 F.3d at 498.

Fourth, and perhaps most important, the Brown court articulated the pragmatic rationale for placing the burden upon the claimant:

13

> [The claimant] is the party best suited to demonstrate whether she would still be disabled in the absence of drug or alcohol addiction. We are at a loss to discern how the Commissioner is supposed to make such a showing, the key evidence for which will be available most readily to [the claimant].

Id. See also Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so.").

Doughty raises a related issue on appeal. He asserts that an internal Social Security Agency communication requires the ALJ to call a medical or psychological consultant or disability examiner to testify regarding the materiality issue. See Emergency Teletype, Office of Disability, Social Security Administration, "Questions and Answers Concerning DAA from July 2, 1996 Teleconference -- Medical Adjudicators -- ACTION," August 30, 1996 (the "Emergency Teletype"). We do not find, however, that the Emergency Teletype imposes a new requirement upon the ALJ to seek a consultant's opinion when making a materiality determination.[4] Rather, the regulations laid out in 20 C.F.R. § 404.1512(d)-(f) state that the ALJ may ask the claimant to attend a consultative

---

[4]Because we find that the Emergency Teletype imposes no new duty on the ALJ in this case, we need not address Doughty's assertion that the Emergency Teletype is binding on the Social Security Administration as agency policy.

14

examination at the Commissioner's expense, but only after the Commissioner (through the ALJ) has given "full consideration to whether the additional information needed . . . is readily available from the records of [the claimant's] medical sources." 20 C.F.R. § 404.1519a(a)(1). The regulations "normally require" a consultative examination only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources. 20 C.F.R. § 404.1519a(b).

We find that there was sufficient evidence in the record in this case to support the ALJ's determination that Doughty's alcoholism was a material contributing factor to his disability. One medical expert noted that Doughty appeared to be "entirely normal" when sober and did not have chronic physical impairments that would remain if he quit drinking. Another medical source states that he believed Doughty was capable of handling his own financial affairs. These medical opinions, in addition to Doughty's own testimony regarding his ability to carry out daily activities, support the ALJ's conclusion that alcoholism was a contributing factor material to Doughty's disability determination. Unlike Brown, in which the court remanded for further evidentiary gathering, see Brown 192 F.3d at 499, there is ample evidence in the record of this case supporting the ALJ's conclusion regarding the materiality of Doughty's dependence. Furthermore, in

15

Doughty's case, unlike in <u>Brown</u>, <u>see</u> <u>id.</u>, the ALJ specifically questioned Doughty at his hearing regarding his alcoholism. We thus find no need for remand here.

In sum, we hold that in disability determinations for which the medical record indicates alcohol or drug abuse, the claimant bears the burden of proving that the substance abuse is not a contributing factor material to the disability determination pursuant to 42 U.S.C. §423(d)(2)(C) or 1382c(a)(3)(J). Accordingly, we affirm.

**AFFIRMED.**