Maria SAMBULA, for Angel Guity
a Child Angel Guity, a minor,
Plaintiff,

v.

Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant.

No. CIV.A. H–01–1215.

United States District Court,
S.D. Texas,
Houston Division.

April 29, 2002.

Reverend Dr. Jones, Gulf Coast Legal Foundation, Houston, TX, for plaintiff.

Tasha Williams Stevenson, Special Ass't U.S. Atty., Dallas, TX, for defendant.

### MEMORANDUM AND ORDER

ATLAS, District Judge.

This Social Security Act appeal was referred to Magistrate Judge Calvin Botley pursuant to 28 U.S.C. §§ 636(b)(1)(B). On April 2, 2002, Magistrate Judge Calvin Botley issued a Memorandum and Recommendation [Doc. # 19], suggesting that this Court grant Defendant's Motion for Summary Judgment [Doc. # 16], and deny Plaintiff's Motion for Summary Judgment/Remand [Doc. # 12]. The time for objections to be filed by the parties has expired without any objections having been filed.[1] The Court finds that the suggested resolution of the issues in the Memorandum and Recommendation are well founded, and that the Magistrate Judge's recommended dispositions should be adopted.[2] It is therefore

---

[1] The Memorandum and Recommendations was entered on the docket of the Court on April 2, 2002, and copies were served on the parties that day. The time for objections expired ten business days later. *See* 28 U.S.C. § 636(b)(1).

[2] Since there are no objections, the Court has not made a de novo review of this matter.

**ORDERED** that the **Memorandum and Recommendations** [Doc. # 19] is **adopted** as this Court's Memorandum and Order. It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 16] is **GRANTED.** It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment/Remand [Doc. # 12] is **DENIED.** It is further

**ORDERED** that this case is **DISMISSED with prejudice.**

A final judgment will be entered separately.

## MEMORANDUM AND RECOMMENDATIONS

BOTLEY, United States Magistrate Judge.

Plaintiff Maria Sambula ("Sambula") for Angel Guity ("Guity"), a minor child, pursuant to 42 U.S.C. § 405(g), brings this action seeking judicial review of the Social Security Administration's ("SSA") denial of the minor's claim for continued Supplemental Security Income ("SSI") benefits provided by Title XVI of the Social Security Act, and 42 U.S.C. § 1382(c)(a)(3). *See Plaintiff's Motion for Summary Judgment/Remand* (Docket Entry # 12). Defendant Jo Anne B. Barnhart, Commissioner of the SSA ("Commissioner"), urges that the decision to deny continued SSI benefits be affirmed. The Commissioner maintains that Guity's medical condition has improved, and, therefore, his condition no longer meets the criteria of the "listing of impairments." *See Defendant's Motion for Summary Judgment* (Docket Entry # 16). Guity contends that the Commis-

sioner erred when she denied him continued SSI benefits and that the decision was not supported by substantial evidence and was based on errors of law, errors in fact, and was an abuse of discretion. Guity, therefore, requests that this Court grant summary judgment in his favor, or in the alternative, remand the decision for further proceedings. The Commissioner, however, contends that the decision to deny Guity continued SSI benefits was premised on substantial evidence and relevant legal standards that supported the conclusion that according to a continuing disability review Guity had medically improved and, therefore, was not disabled. The Commissioner, therefore, urges this court to affirm her decision.

## I. STATEMENT OF FACTS

### A. Factual Background

Maria Sambula filed a Title XVI application for SSI benefits on behalf of her minor child, Angel Guity on June 23, 1992, alleging that he suffered a speech impairment and has been disabled since May 11, 1992. (R.16)[1]. Guity was born on February 18, 1987. At that time he lived with his mother, father, two brothers, ages three and four, and a sister age four months. (R.146). On December 27, 1988, at Lincoln Medical Health Center, Guity underwent an x-ray of his head because it appeared enlarged for his age of twenty-two (22) months. (R.145). The x-ray findings revealed a large skull with no evidence of craniosynostosis.[2] Guity also had normal infantile landmarks, for example, such as walking by one year and three months. No major illness was found to

---

1. References made to statements taken from that portion of the record identified as "transcript" of the administrative hearing are designated "T" and are followed by the applicable page number(s) of the record; references made to statements or items contained in the

remainder of the record are designated "R" and followed by the applicable page numbers(s) of the record.

2. Craniosynostosis is a premature closure of the sutures of the skull, causing deformities.

have resulted from his large head. (R.145). The infant was seen by Rachel Sommers, MA, CCC–SLP, on October 21, 1992, for a speech and language evaluation. (R. 146). Guity was sixty–eight (68) months old at the time he was evaluated. Sambula reported that she noticed speech and language development problems when the child was approximately at three and one–half years of age. She also reported that his speech and understanding were not good at that time, despite the fact he was attending a primarily English speaking day care center. (R. 146). Spanish was the only language being spoken in the home. The evaluation revealed that the minor's hearing appeared adequate for every day communicative purposes. (R.147). A hearing test performed two months earlier revealed satisfactory results. During this testing, the Peabody Picture Vocabulary Test revealed an extremely low score equivalent to two years, five months. Guity's Auditory Comprehension, Expressive Communication and Total Language Scores were found to be severe. (R.147). The child's spontaneous speech was found to be below chronological age expectations. (R.147). Speech intelligibility in connected speech to an unfamiliar listener(s) and speech fluency were within normal limits. (R.148). The diagnostic impressions were that Guity presented with severely impaired receptive and expressive language skills, and, mild to moderate articulation deficit existed. Guity's communicative performance fell at least two and one–half years below his chronological age. The prognosis for improvement in receptive and expressive language, as well as speech skills with therapy was good. (R.148). The examiner recommended that Guity enroll in a special education placement setting providing speech and language therapy three times a week for thirty (30) minutes on an individual basis. Bilingual services were recommended as well. The examiner also recommended

that Guity's hearing be tested, annually. (R.148). Based upon the records provided by Lincoln Medical Center and Rachel Sommers, MA, CCC–SLP, the SSA found Guity to be eligible for SSI benefits because his impairments met the requirements set forth in § 112.04 of 20 C.F.R Part 404, Subpart P, Appendix 1. (R.32). His benefits commenced June 1, 1992 and ceased on June, 1999. (R.78).

On April 26, 1999, pediatrician, Dr. Jorge Pinera of the Texas Rehabilitation Commission's ("TRC") Disability Determination Services evaluated Guity for speech problems, as part of a continuing review of his disability status. Guity was thirteen (13) years old, at the time of the examination. Dr. Pinera noted that Guity had not received a speech evaluation or any speech therapy since he was determined eligible for SSI benefits in June 1992. (R.149). He also noted that Guity would not be promoted in school, not because of speech related problems, but due to lack of academic achievements instead. (R.149). Guity was found to be an active child, who walked, ran, and moved around without difficulties, and no abnormalities were seen. (R.149). Guity articulated and communicated well, and did not show any sign of expressive or receptive language disorder. His degree of intelligibility was close to 95%. (R.149). Guity was also found to be alert, well nourished and cooperative. Dr. Pinera's impression was that Guity's examination revealed a normal examination, with no significant speech disorder. Also, Dr. Pinera found no functional limitations in motor functioning, completing tasks, or in performing self-care activities. The physician did indicate that Guity could have impaired learning capabilities. (R.150).

Guity was evaluated further by his teachers at Tomball Intermediate School in April, 1999. Suellen Lindsay ("Lind-

say"), his English as a Second Language ("ESL") teacher, reported that Guity was functioning below 6th grade level in all areas. Lindsay reported that the child's progress was not related to a language problem, but a learning problem. (R.156). Lindsay also stated that Guity worked very hard and was a conscientious student. (R.156). Lastly, the teacher reported that Guity did not exhibit any functional limitations, and that he followed the regular class schedule and behavior policies. (R.157). Guity was in a regular mathematics class, and his teacher was Constance J. Hurst ("Hurst"). Hurst noted that, other than ESL, Guity was in all regular classes, and that he had no physical or psychological limitations. (R.158). Hurst reported that the minor had difficulty in mathematics, that involved comprehension of basic facts and concepts that required teacher monitoring, reteaching, and peer coaching. (R.158). Guity was noted to be a very cooperative student, well behaved, and respectful. Hurst reported that Guity completed every task given whether right or wrong, and that Guity adjusted well to the school, that he gave 100% effort toward his school work and that with reinforcement and continued review, he could achieve success. (R.158–159). Claire Youngblood ("Youngblood"), his science and social studies teacher completed an evaluation on Guity. Youngblood reported that she did not notice any speech problems with him. (R.162). She noted that the child's academic functioning was average or below average level at times. At times Guity required material be read to him when needed, and monitoring to assure his understanding. (R.161). Youngblood did not note that Guity had any psychological or physical limitations, and that he was a respectful, quiet and a very pleasant young man. (R.161). All of his teachers collectively responded "no" to questions regarding any sudden worsening in the child's functioning or behavior, and

if there was a pattern of behavior of sudden changes. (R.163).

On May 21, 1999, Dr. P. Clift Price completed a continuing disability review for the SSA. Dr. Price evaluated Guity, utilizing reports provided by Dr. Pinera and Guity's teachers and determined that Guity no longer met the requirements for disability. (R. 167). Dr. Price determined that Guity did not reveal a significant speech disorder, was not receiving any speech therapy, conversed well in English and Spanish and that his allegation of speech limitation was not supported by medical or any other evidence. (R.167). Dr. Price concluded that Guity did not engage in any substantial gainful activity and that Guity's evidence did not show that the impairment resulted in marked or functional limitations. Further, the evidence did not support an impairment or combination of impairments that met or equaled the severity described in the listing of impairments, and, accordingly, Guity was found, not disabled. (R.167).

On September 23, 1999, Dr. Linda G. Prentice completed a continuing disability review reconsideration report for the SSA. Dr. Prentice reported that Guity had medically improved since the initiation of SSI benefits, and, therefore, did not qualify for SSI benefits. (R.171). This finding was supported by evidence that Guity did not reveal a significant speech disorder, was not in any special education classes, was not in any speech therapy classes, and conversed well in English and Spanish. Dr. Prentice also noted that the allegations of speech disorder were not supported by medical evidence, Guity was not blind, and did not engage in substantial activity. (R.171).

Guity was given a psychological evaluation by Dr. Mattew H. Leddy on August 16, 2000. Guity was thirteen (13) years five month(s) at the time of the examina-

tion. He was in the seventh grade at Cook Junior High School, enrolled in regular classes. Guity was noted to have positive relationships with his teachers and peers, and did not present behavioral problems in the classroom. (R.178). The child was noted to be capable of dressing and grooming himself. Guity understands to dial 911 in an emergency. His speech rate and tone appeared normal during the examination. His eye contact was normal and he did not have any deficits regarding general memory, expressive and receptive language, sensory-perceptual, or fine-and gross motor functioning. (R.178). Guity's thought processes were clear and goal directed; his judgment appeared to be age appropriate and he was not prescribed or taking any psychiatric medications at the time of the examination. (R.178). The testing revealed positive for gross signs of underlying and functional neuropsychological impairment [3] and he was given a Global Assessment Function (GAF) [4] score of 45. (R.181). He had deficits of general fund of knowledge, vocabulary comprehension, general intellect, reading, spelling and arithmetic reasoning. Academically, no learning disability was established or Attention–Deficit/Hyperactivity Disorder was diagnosed. (R.180). Dr. Leddy recommended that Guity's caretakers be advised of his academic and intellectual functioning and that Guity be provided with the most appropriate academic environment to improve his academic and intellectual skills. (R.181) Dr. Leddy also recommended that Guity have a follow-up neuropsychological evaluation in one (1) year or six (6) months to assess the status of his cognitive and academic deficits, and their response to remediation. (R.181–182).

## B. The Procedural Background—The Administrative Proceedings and Exhaustion of Administrative Remedies

Guity filed an application for childhood Supplemental Security Income Benefits on June 23, 1992. (R.10, 12). The SSA granted SSI benefits based upon the application, on December 7, 1992, finding that the severity of Guity's impairment met the requirements of § 112.04 20 C.F.R. Part 404, Subpart P, Appendix 1. (R.32). Following a continuing disability review, the SSA notified Guity that on June 15, 1999, he was no longer eligible for SSI benefits and that his benefits would cease in August, 1999. (R.124–125). Guity filed a request for reconsideration on June 24, 1999, and was notified on October 4, 2000, that a hearing would be conducted on November 7, 2000. (R.172–175). The hearing was conducted on November 7, 2000, and neither Guity nor his mother, Maria Sambula was present despite notification of the hearing. (R.10; T.188–193). Guity was, however, represented by an attorney, at the proceedings. (R.10; T.188–193). On December 20, 2000, the ALJ determined that Guity no longer had an impairment which imposed "marked and severe" functional limitations and, therefore, he was not disabled under Title XVI of the Social Security Act. (R.11–15). Guity then filed a request for a review of the ALJ's

---

3. Neuropsychological pertains to neuropsychology which is a discipline combining neurology and psychology to study the relationship between the functioning of the brain and cognitive processes or behavior, using psychological testing and assessment to assay central nervous system function and diagnose specific behavioral or cognitive deficits or disorders.

4. Global Assessment of Functioning is a rating of psychiatric status from 1 (lowest level of functioning) to 100 (highest level) assessing psychological, social, and occupational functioning widely used in studies of treatment effectiveness.

decision on December 26, 2000, with the Appeals Council. (R.3). The Appeals Council [5] concluded that there was no basis for granting a review of the ALJ's decision, therefore, the decision of the ALJ became the final decision. (R.3–4). On April 12, 2001, Guity filed this complaint seeking review of the ALJ's decision, pursuant to the Social Security Act, 42 U.S.C. 1383, which authorizes review of a final decision of the Commissioner's denial of eligibility for SSI Disability Benefits, Title XVI. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 636(b)(1)(A) [6].

## II. ANALYSES

### A. The Standards of Review—The Motion for Summary Judgment

■ Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law, thereby, alleviating the necessity, in this instance, of reversing and vacating the administrative decision or of a remand for further administrative proceedings. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c); *see also Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir.1998); *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A factual dispute is "genuine" when a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also PYCA Industries, Inc. v. Harrison County Waste Water Management District*, 177 F.3d 351, 361 (5th Cir. 1999); *Crowe v. Henry*, 115 F.3d 294, 296

(5th Cir.1997). The substantive law dictates which facts are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. 2505. In instances as here, where both parties have moved for summary judgment, as to each party's motion, all inferences on summary judgment must be drawn in favor of the non-moving party, to the extent that if there appears to be some evidentiary support for the disputed allegations, that motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247, 106 S.Ct. 2505; *McAllister v. R.T.C.*, 201 F.3d 570, 574 (5th Cir.2000). Once summary judgment is properly supported, however, the burden shifts from the movant to the adverse party, who may not rest on mere allegations or denials, but must set forth specific and supported material facts, of significant probative value, to preclude summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *International Assoc. of Machinists and Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.*, 199 F.3d 796, 798 (5th Cir.2000); *Union Planters National Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir.1982). Only upon showing that there remain no issues as to any material facts, which may be gleaned from reviewing the pleadings, answer to interrogatories, admissions, and affidavits on file, will summary judgment be allowed. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc).

### B. The Administrative Determination

■ A review of the Commissioner's decision to deny benefits is relegated to a determination of whether substantial evidence in the record supports the decision,

---

**5.** The Appeals Council letter of response was undated. (R.3–4).

**6.** This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C.

§ 636(b)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act and Rule 72, Fed. R.Civ.P. See Order of Referral (Entry # 4).

and further, whether proper legal standards were used in evaluating the evidence. *Boyd v. Apfel,* 239 F.3d 698 (5th Cir.2001); *Loza v. Apfel,* 219 F.3d 378, 389 (2000); *Estate of Morris v. Shalala,* 207 F.3d 744, 745 (5th Cir.2000); *Crowley v. Apfel,* 197 F.3d 194, 197 (5th Cir.1999); *Jones v. Apfel,* 174 F.3d 692, 693 (5th Cir.1999). "Substantial evidence" means that which is more than a mere scintilla but less than a preponderance, and it is evidence of such relevance that a reasonable mind would accept it as adequate to support the conclusion reached. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir.1995)(per curiam). The Court is not, however, allowed to reweigh the evidence, retry the facts *de novo,* or substitute its judgment for that of the Commissioner. *Id.*; *see also Randall v. Sullivan,* 956 F.2d 105, 113, reh. denied (5th Cir.1992); and, any finding that there is no substantial evidence to support the Commissioner's determination is appropriate only if no credible evidentiary choices or medical findings exist to support the decision, *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Kinash v. Callahan,* 129 F.3d 736, 738 (5th Cir.1997); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995), thereby, compelling a "[j]udicial review [that is] deferential without being so obsequious as to be meaningless." *Brown v. Apfel,* 192 F.3d at 496; *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986).

## III. DISCUSSION

### A. Disability Determination in Children

Prior to 1990, a child was disabled if he suffered from any medically determinable physical or mental impairment of comparable severity to an impairment that would prevent an adult from working. On February 20, 1990, the United States Supreme Court decided *Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). First, the ALJ would have had to determine whether the claimant was engaged in substantial activity. Second, if the claimant had engaged in substantial activity, the next decision would have been to determine whether he had a severe impairment. Third, if the claimant had a severe impairment, it had to be determined whether the impairment met or equaled an impairment listed in 20 C.F.R Part 404, Subpart P, Appendix 1. Fourth, a determination had to be made whether the impairment or impairments of comparable severity to that which would prevent an adult from engaging in substantial gainful activity. 20 C.F.R. § 416.924.

Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act ("The Act"), Pub.L. No. 104–193 in 1996, which statutorily amended the relevant substantive standard for evaluating children disability claims, under 42 U.S.C. § 1382c(a)(3)(C)(2001). It provides that an individual under the age of 18 shall be considered disabled if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Section 211(d)(1) of the Act, provides that the new standard for evaluating children disability claims applies to all cases not finally adjudicated as of the effective date of the Act, August 22, 1996, including those cases in which a request for judicial review was pending.

Disability is now determined in children by utilizing the steps set forth in 20 C.F.R. § 416.924. A determination must first be made as to whether the child is engaged in any substantial gainful activity, and if so

found, then the child is considered not disabled. If found not to have engaged in substantial gainful activity, the next step is to consider any physical or mental impairment or any combination of impairments that can be considered severe. If the impairment is considered severe, then the ALJ must review to determine if the impairment medically equals, or functionally equals in severity any impairment that is listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If an impairment is found, then it must meet the duration requirement to determine if the claimant is disabled. 20 C.F.R. 416.924. If a child's impairments do not meet a listed impairment, a functional limitation assessment is done to determine whether functional limitations are disabling (functional equivalence for children). 20 C.F.R. § 416.926a; *Also See Harris v. Massanari,* 2001 WL 637364 (E.D.La.2001). Individualized functional assessments for children, however, have been eliminated. *Harris* at *5. Guity's initial evaluation in June, 1992, revealed that he met the requirements for disability because it was determined that he met the requirements in § 112.04 of 20, C.F.R., Part 404, Subpart P, Appendix 1, and that his condition was expected to last more than twelve (12) months; therefore, the SSA granted him benefits based upon meeting the requirements.

**B. The ALJ Correctly Found Guity Medically Improved and, Therefore, No Longer Qualified for SSI Benefits**

The standard utilized for medical improvement[7] is outlined in 42 C.F.R § 423(f), which is a review for termination of disability benefits. It provides that disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by substantial evidence. 42 C.F.R § 423(f)(2001). Substantial evidence exists when evidence demonstrates that there has been any medical improvement in the individual's impairment or combination of impairments. It also exists when new medical evidence and a new assessment of the individual's residual functional capacity, demonstrates on the basis of evaluations, the individual's impairment or combination of impairments is not as disabling as it was considered to be at the time of the most recent prior decision that he or she was under a disability or continued to be under a disability. 42 C.F.R § 423(f). *See also* 20 C.F.R. § 416.994(a)(a-c)

In the instant case, Guity was re-evaluated by the TRC as part of an ongoing review of his disability status to determine continued eligibility. 20 C.F.R. 416.994(a)(a). Initially, in June 1992, Guity was granted SSI benefits because he met the requirements of § 112.04 of 20 C.F.R., Part 404, Subpart P, Appendix 1. The SSA determined that he had severely impaired receptive and expressive language. (R.32). In April of 1999, however, Guity's reevaluation revealed that he had improved. Dr. Jorge Pinera, noted that he no longer had any signs of having a receptive or expressive language disorder and that he had a degree of intelligibility of 95%. (R.149). He also noted that Guity did not have any functional limitations in motor functioning, completing tasks, or in performing self-care activities. *See* 20 C.F.R. § 416.926(a), Functional Equivalence for Children. Dr. Pinera noted that

---

7. Medical improvement is defined as any decrease in the medical severity of a claimant's impairment which was present at the time of the most recent favorable decision that the claimant was disabled or continued to be disabled. 20 C.F.R. 416.994(c).

Guity could have had impaired learning capabilities.

Guity was also evaluated by all of his teachers at Tomball Junior High School in April, 1999, in response to the SSA's re-evaluation process. At the time of their evaluation, he was enrolled in regular classes. Collectively, all of his teachers described Guity as a hard-working child, without any behavior problems in school. All of Guity's teachers denied observing a speech or language problem with Guity. Each also noted that they had not observed any type of physical or psychological limitation. However, they all agreed that Guity may have a learning disability. The English teacher noted that his progress was not related to a language problem, but a learning problem. (R.156). His mathematics teacher reported that he completes all tasks given whether right or wrong. She also noted that Guity had adjusted well in school and that with reinforcement, he is expected to achieve success. (R.159). Finally, his social studies/science teacher noted that Guity was a respectful, and quiet young man. (R.161).

■ The evidence considered in determining disability for children may be taken from many sources such as, medical sources, parents, and from teachers. 20 C.F.R. 416.924(a). For such an individual [under age 18], an impairment(s) is considered "not severe" if it is a slight abnormality (ies) that causes no more than minimal limitation in the individual's ability to function independently, appropriately, and effectively in an age appropriate manner. SSR 96–3P, 1996 WL 374181. An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Stone v. Heckler*, 752 F.2d 1099 (5th Cir.1985)

Guity was evaluated twice by the SSA to determine eligibility for SSI benefits. The first evaluation was performed by Dr. P. Clift on May 21, 1999, utilizing the reports from Dr. Pinera and Guity's teachers. The results of the evaluation were that Guity no longer met the requirements to continue to receive SSI benefits. (R.167). The second evaluation was completed by Dr. Linda G. Prentice on September 23, 1999. (R.171). Dr. Prentice determined that Guity had medically improved since the initial evaluation in June, 1992. (R.171). The physician noted that Guity was not in any special education classes and conversed well in English and Spanish. She also noted that the allegations of speech disorder were not supported by substantial evidence. (R.171). C.F.R. 42 § 423(f), is determinative that SSI benefits may cease if the mental or physical condition that entitled the claimant to benefits is ceased and is supported by substantial evidence of an improvement of the impairment.

■ Dr. Leddy performed a psychological evaluation on Guity on August 16, 2000. Guity was enrolled at Cook Junior High School in regular classes at the time of the evaluation, did not have any behavioral problems, and had positive relationships with his peers and teachers. (R.178). He was capable of self grooming and dressing himself, had normal speech rate and tone during the examination and was noted that he did not have a receptive-expressive language deficit. (R.178). Guity's judgments appeared normal and age appropriate. Dr. Leddy diagnosed Guity positive for underlying and functional neuropsychological impairment and a GAF of 45. Substantial evidence exists in the reports of the Texas Rehabilitation physicians, and even the report submitted by Dr. Leddy, that Guity does not have a receptive-expressive language disorder. The reports

from his teachers were indicative of how well Guity functioned in school with them and his peers. Guity even described himself as doing well in school with grades of 80's in most classes and a 70 in language. (R.79).

 Guity proposes that a GAF score of 45 is determinative of a disability. The ALJ considered his score of 45, however, determined that substantial evidence to the contrary existed. It is the ALJ's duty to make credibility determinations based on the medical reports submitted and the testimony given by experts. *Griego v. Sullivan,* 940 F.2d 942 (5th Cir.1991). The ALJ is "[e]ntitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions and testimony accordingly." *Scott v. Heckler,* 770 F.2d 482 (5th Cir.1985). The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. *Bradley v. Bowen,* 809 F.2d 1054,1057 (5th Cir.1987). If, however, "any of the evidence in [a] case record, including any medical opinion(s) is inconsistent with other evidence or is internally inconsistent," the ALJ is to weigh all the other evidence in making his determination regarding disability. *Greenspan v. Shalala* 38 F.3d 232, 237 (5th Cir.1994). Guity's lawyer requested another neuropsychological evaluation at the hearing and also provided the ALJ with an explanation of a GAF 45. The request indicated that a GAF score of 45 could indicate that Guity could have serious impairment in social, occupational, or school functioning. (R.183). He could have few friends, or conflicts with others. It could also mean that he could have suicidal ideation, severe obsessional rituals, or could be a shoplifter. Clearly, in all of Guity's evaluations that the ALJ had to consider in the evaluation process of Guity, not one evaluator or even his mother, described Guity as having or had any of the above described behaviors indicative of a GAF score of 45. All of the findings that the ALJ reviewed rebutted the GAF scoring, hence, provided substantial evidence that Guity has medically improved and, accordingly, further testing was unnecessary.

## C. Guity Does Not Have an Impairment that Qualifies for SSI Benefits

 The ALJ determined that Guity did not have a disability impairment listed under 20 C.F.R Part 404, Subpart P, Appendix 1 that qualified him for continued SSI benefits. Further, Guity offers no other impairment to consider whether he qualifies for benefits. Specifically, Guity does not have an impairment that met or equaled the requirements of Listing 112.05. Guity obtained a verbal IQ[8] score of 78, a performance IQ score of 79, and a fullscale score of 76. (R.179). Dr. Leddy diagnosed Guity with borderline intellectual functioning, which does not meet the requirements for a severe impairment under the Listings. Guity would have had to receive an IQ score of less than 70 and have at least two of the following: a marked restriction of activities of daily living, or marked difficulties in maintaining social functioning, or marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration. 20 C.F.R Part 404, Subpart P, Appendix 1 § 112.05. While Guity's borderline intellectual func-

8. Intelligence quotient is the measure of intelligence obtained by dividing the patient's mental age, as ascertained by the Binet test, by his chronological age and multiplying the result by 100. A binet test is a method of testing the mental capacity of children and youth by asking questions adapted to, and standardized on, the capacity of normal children at various ages. According to the answers given, the mental age of the subject is ascertained.

tioning may impose a marked limitation of one area of functioning, there is no evidence that he has any limitation of any other area of functioning. The regulations provide that a finding of functional equivalence under the broad limitations methods is appropriate when a child has an extreme limitation in one area of functioning or a marked limitation in two areas of functioning. 20 C.F.R. § 416.925.(b)(2). The record provides substantial evidence and the proper legal standards were utilized to support the ALJ's decision that, though, Guity had one severe marked limitation, it did not support a finding of functional equivalence that qualifies him for a disability, hence, he does not qualify for continued SSI benefits. 20 C.F.R. § 416.925.(b)(2).

**D. Claimant Failed to Adduce Evidence that He or His Mother Were Present at the Administrative Hearing**

Guity alleges that he and his mother Maria Sambula were present at the administrative hearing and that the transcript was not complete on November 7, 2000. Further, it is alleged that testimony was given by both during the hearing. The administrative hearing transcript clearly reflects that Guity and his mother, Maria Sambula, were not present at the hearing. The ALJ questioned the claimant's attorney about the whereabouts of Guity and his mother and whether they were notified about the hearing. The attorney answered that her clients were telephoned the week before the hearing by someone at her office to advise them of the hearing, and that the claimants planned to attend the hearing. (R.188–189). The ALJ also questioned whether or not the hearing should proceed without them. The attorney posed no objections to the commencement of the proceedings without her witnesses. At no time during the transcript was it ever indicated that Guity or his mother arrived, or that they testified during the hearing. (R.188–193). Further, no attestation has been made to the contrary. This court can only rely on the evidence before it and must conclude, therefore, that Guity and his mother were not present at the hearing.

## CONCLUSIONS

Following a review of the entire record, it is recommended that the ALJ's findings be affirmed as the findings comport with the applicable legal standards, substantial evidence and with no error in fact or abuse in discretion, and, accordingly, there has not been presented in this matter, a genuine issue necessitating the reversal or modification of the Commissioner's decision. In accordance with 28 U.S.C. § 636(b)(1)(C) it is, therefore,

**RECOMMENDED** that Maria Sambula, for minor child Guity's Motion for Summary Judgment (Entry # 12) be **DENIED.** Further, it is

**RECOMMENDED** that the Commissioner's Motion for Summary Judgment (Entry # 16) be **GRANTED.**

The Clerk shall file this Memorandum and Recommendations and provide the parties with a true copy. The failure to file written objections to the proposed findings and recommendations within ten (10) days of the entry of this Memorandum and Recommendations, may bar an aggrieved party, except upon ground of plain error, from attacking the proposed factual findings and legal conclusions, on appeal.

April 2, 2002.