**Theresa HIGGINS, Plaintiff,**

v.

**Jo Anne B. BARNHART,[1] Commissioner of the Social Security Administration, Defendant.**

**No. CIV.A. H–01–2595.**

United States District Court, S.D. Texas, Houston Division.

Aug. 2, 2002.

---

1. Jo Anne B. Barnhart was appointed Commissioner of the Social Security Administration effective November 9, 2001 and, accordingly, is substituted as the defendant in this matter.

Donald Clifton Dewberry, Attorney at Law, Houston, for Theresa Higgins, plaintiff.

Kerry J Simpson, U.S. Atty's Off, Special Assistant U.S. Atty, Dallas, for Jo Anne B Barnhart, Commissioner, Social Security Administration, defendant.

## MEMORANDUM AND ORDER

HOYT, District Judge.

Having conducted a review of the Memorandum and Recommendations [Doc. # 15], as well as all other materials on file in this proceeding, and noting that no objections have been filed to the Memorandum and Recommendations, this Court finds that the Memorandum and Recommendations are well founded and are herein adopted in full. It is, therefore,

**ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. # 11] is **DENIED**. Further, it is

**ORDERED** that the Commissioner's Motion for Summary Judgment [Doc. # 13] is **GRANTED**. Finally, it is

**ORDERED** that this matter is **DISMISSED with prejudice** from the docket of the Court.

The Clerk of Court shall file this Memorandum and Order and provide the parties with a true copy.

## MEMORANDUM AND RECOMMENDATIONS

Plaintiff Theresa Higgins ("Higgins") seeks judicial review of the Social Security Administration's ("SSA") denial of her claim for supplemental security income benefits provided by Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 1381, *et seq.* *See* Plaintiff's Motion for Summary Judgment (Entry # 11) and Memorandum in Support (Entry # 12).[2] Defendant Jo Anne B. Barnhart,

Commissioner of the Social Security Administration ("Commissioner") urges her decision denying Higgins' claim for benefits be upheld and maintains that Higgins is not disabled as she is capable of performing unskilled, light jobs, including her past relevant work, jobs found to exist in significant numbers in the national economy. *See* Defendant's Motion for Summary Judgment (Entry # 13) and Brief in Support (Entry # 14).[3] Higgins contends that the administrative law judge ("ALJ") wrongfully determined that she is not disabled as a consequence of failing to properly and fully develop the record by obtaining a consultation from a mental health expert to clarify whether the claimant retained the mental residual functional capacity to perform light, unskilled work. *See* Plaintiff's Motion for Summary Judgment (Entry # 11). Higgins maintains that the Commissioner's decision should be reversed or remanded, contending that it is not predicated upon substantial evidence and does not comply with applicable legal standards. Conversely, the Commissioner contends that her finding that Higgins is not disabled, is based upon a complete review of the claimant's medical records as well as the opinions of her treating physicians and those of the vocational and consulting medical experts and, accordingly, the Commissioner's reaffirmation of the ALJ's decision that Higgins is not disabled, as she retains the residual functional capacity to perform unskilled, light work, is premised upon substantial evidence and the proper application of the relevant legal standards. *See* Defendant's Motion for Summary Judgment (Entry # 13). The Commissioner disputes Hig-

---

**2.** Plaintiff's Motion for Summary Judgment (Entry # 11) and Memorandum in Support (Entry # 12) will be referred to henceforth as the single instrument, "Plaintiff's Motion for Summary Judgment (Entry # 11)."

**3.** Defendant's Motion for Summary Judgment (Entry # 13) and Brief in Support (Entry # 14) will be referred to henceforth as Defendant's Motion for Summary Judgment (Entry # 13).

gins' claims and contends that affirming the denial of the claim for disability insurance and supplemental security income benefits is the only proper conclusion to this matter.

## The Factual And Procedural Background

### The Pertinent Factual Background— The Medical History and Alleged Impairments

Theresa Higgins is a forty-nine (49) year old, single female with no minor children. Higgins earned a high school diploma and approximately two years of a junior college education (Brazosport College of Lake Jackson, Texas), and has past work experience as a motel and hotel housekeeper. (R. 241–249; T. 284–285, 289).[4] On September 9, 1994, Higgins ceased working, allegedly as a result of her involvement in a severe motor vehicle accident, in which she claims she suffered multiple pelvic fractures, a neurogenic bladder and severe pain. Additionally, Higgins claims that she is mildly mentally retarded. (R. 70–72, 93, 128–139, 260–262; T.295).

On August 9, 1994, Higgins sustained pelvic fractures and a urethrovaginal fistula following an automobile accident, so severe she had to be extricated from the wreckage using the Jaws of Life and was life flighted to the hospital. Surgical repair of the fractures and fistula was performed on August 17, 1994, at the University of Texas Medical Center by surgeons, Drs. Marcellus E. LaHaye and Daniel Mitchell. (R. 128–166). Higgins was discharged from the hospital on September 7, 1994, in relatively good condition and was able to ambulate with a walker to alleviate weight bearing on her left lower extremity. Medical records also indicated the presence of minimal vaginal urine leakage. (R. 128–129). On October 11, 1994, orthopedic surgeon, Dr. Abdullah Foad, reported that Higgins indicated she had no pain in her pelvis although she was experiencing some pain in her left lower foot area. An examination revealed that Higgins had good range of motion of the hip with no pain along the left femur or left tibia and she had good range of motion of her knee and ankle with no pelvic pain on vertical or horizontal compression. Higgins was instructed to begin weightbearing activities as she could tolerate it. (R. 224).

A physical examination, following a successful colostomy closure, performed on March 5,1995, by surgeon, Dr. Thomas Kimbrough, revealed that Higgins had full range of motion in her extremities with no clubbing, cyanosis or edema. Her peripheral pulses were intact as well as her cranial nerves and motor sensations. (R. 203).

On October 31, 1997, Dr. Durwood E. Neal, Jr., performed a cystometrogram to maximize Higgins' urethral pressure and alleviate her complaints of incontinence. (R. 173). Following the procedure, Higgins indicated that she had intermittent incontinence with minimal bladder urgency, successfully maintained at that level with the medication, Ditropan and wearing adult diapers. (R. 173–177; 196–200, 238; T. 290).

On February 15, 1999, at the request of her attorney, Higgins submitted to the psychological testing of psychologists, Dr. Eva Stubits and John C. Roberts of Houston Psychological Associates. It was noted that Higgins appeared for testing, using a four-point cane to walk. Higgins indicated she had never been hospitalized

---

4. References made to statements taken from that portion of the administrative record identified as the "transcript" of the administrative hearing are designated "T," followed by the applicable page number(s) of the record; and, references made to items contained in the remainder of the record are designated "R," followed by the applicable page number(s).

for psychiatric treatment, had no history of mental or emotional illness and was taking no medications. Higgins demonstrated an average level of skill and activity, appeared self-motivated and eager to perform but tested in the mentally deficient range (full scale IQ= 66; verbal IQ = 69; and, performance IQ = 68). Higgins was diagnosed as being borderline intellectual functioning with no relative weaknesses. Higgins was found to have an eighth grade reading ability and fourth grade math ability, but was able to perform in those areas better than expected. (R. 252–255).

*The Procedural Background—The Administrative Proceedings and Exhaustion of Administrative Remedies*

Higgins filed an application with the Social Security Administration on February 9, 1998, seeking disability and supplemental security insurance benefits, due to her inability to work since her auto accident in August of 1994, as a consequence of her alleged mental retardation, neurogenic bladder, severe pain and residual effects of pelvic fractures. (R. 65–72; T. 256–258). Following an agency determination of no disability, an administrative hearing was held February 19, 1999, at which Higgins was represented by counsel. (T. 280–304). The administrative law judge, on March 25, 1999, denied Higgins' request for benefits after finding that she was not disabled and was capable of performing light, unskilled work, including her past work as a housekeeper. (R. 16–25). Following Higgins' appeal of the denial of her claim, the Appeals Council affirmed the ALJ's decision in June of 2001 (R. 6–7), thereby, resulting in the ALJ's decision becoming a final decision of the Commissioner. Higgins has, therefore, exhausted all administrative remedies prior to seeking judicial

review and, accordingly, the Court has the proper authority, conferred statutorily, with which to commence its review.[5] See *Sims v. Apfel,* 530 U.S. 103, 107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000); *Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Jackson v. Apfel,* 234 F.3d 246 (5th Cir.2000); *McQueen v. Apfel,* 168 F.3d 152, 155 (5th Cir.1999); *see also* 42 U.S.C. § 405(g); 42 U.S.C § 1383(c)(3) and 20 C.F.R. § 404.981 and/or 20 C.F.R. § 416 (1999), *as applicable.*

STANDARDS OF REVIEW

*The Motion for Summary Judgment*

The standards under which a summary judgment is to be considered are well established. Summary judgment is proper if there is no genuine dispute as to any material fact and the moving party is, therefore, entitled to judgment as a matter of law. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), quoting *Fed.R.Civ.P. 56(c);* see also *Colson v. Grohman,* 174 F.3d 498, 506 (5th Cir.1999); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998); *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir.1993). The moving party bears the burden of showing that there is an absence of evidence to support the non-movant's case. *Id.* A factual dispute is "genuine" when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also *PYCA Industries, Inc. v. Harrison County Waste Water Management District,* 177 F.3d 351, 361 (5th Cir. 1999); *Crowe v. Henry,* 115 F.3d 294, 296 (5th Cir.1997). The substantive law dictates which facts are "material." See

5. This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. section 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act and Rule 72, Fed.R.Civ.P. *See* Order of Referral (Entry # 5).

*Stewart v. Murphy,* 174 F.3d 530, 533 (5th Cir.), *cert. denied,* 528 U.S. 906, 120 S.Ct. 249 (1999); *Duplantis v. Shell Offshore, Inc.,* 948 F.2d 187, 189 (5th Cir.1991). An issue is material if its resolution could affect the outcome of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 248, 106 S.Ct. 2505. Facts may be gleaned from reviewing the pleadings, answers to interrogatories, admissions and affidavits on file. See *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994)(*en banc*). In deciding whether a fact issue has been created, all justifiable inferences, must be viewed in the light most favorable to the nonmoving party, and questions of law are reviewed *de novo.* See *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 151, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Merritt–Campbell, Inc. v. RxP Prods., Inc.,* 164 F.3d 957, 961 (5th Cir. 1999); *Horton v. City of Houston,* 179 F.3d 188, 191 (5th Cir.1999). If the summary judgment motion is properly supported, however, the burden shifts from the movant to the adverse party, who may not rest on mere allegations or denials, but must set forth specific and supported material facts, of significant probative value, establishing that there exists a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *International Association of Machinists and Aerospace Workers v. Compania Mexicana de Aviacion, S.A. de C.V.,* 199 F.3d 796, 798 (5th Cir.2000); *Union Planters National Leasing, Inc. v. Woods,* 687 F.2d 117, 119 (5th Cir.1982).

### The Administrative Determination

A review of the Commissioner's decision to deny disability benefits compels a determination of whether the substantial evidence in the record supports the decision, and further, whether proper legal standards were used in evaluating the evidence. *Loza v. Apfel,* 219 F.3d 378, 389 (5th Cir.2000); *Estate of Morris v. Shalala,* 207 F.3d 744, 745 (5th Cir.2000); *Crowley v. Apfel,* 197 F.3d 194, 197 (5th Cir. 1999); *Jones v. Apfel,* 174 F.3d 692, 693 (5th Cir.1999). "Substantial evidence" means that which is more than a mere *scintilla* but less than a preponderance; and, it is evidence of such relevance that a reasonable mind would accept it as adequate to support the conclusion reached. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater,* 64 F.3d 172, 173 (5th Cir.1995)(*per curiam*). The Court is not, however, allowed to reweigh the evidence, retry the facts *de novo,* or substitute its judgment for that of the Commissioner. *Id.;* see also *Watson v. Barnhart,* 288 F.3d 212 (5th Cir. 2002); and, any finding that there is no substantial evidence to support the Commissioner's determination is appropriate only if no credible evidentiary choices or medical findings exist to support the decision, *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Kinash v. Callahan,* 129 F.3d at 738; *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir.1995), thereby, compelling a "[j]udicial review [that is] deferential without being so obsequious as to be meaningless." *Brown v. Apfel,* 192 F.3d at 496; *Taylor v. Bowen,* 782 F.2d 1294, 1298 (5th Cir.1986).

### Determining the Existence of an Eligible Disability

"Disability" is a legal status that is determined by the ALJ after evaluating expert medical and vocational findings, however, the ALJ's determination must conform to the legal standards established and be supported by substantial evidence. See *Richardson v. Perales,* 402 U.S. at 401, 91 S.Ct. 1420; *Loza v. Apfel,* 219 F.3d at 389. The inquiry necessarily becomes whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by

the ALJ. See *id.* An impairment cannot be assessed as less than severe and accordingly, not disabling, unless it constitutes a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the claimant's ability to work, irrespective of age, education or work experience. See *Stone v. Heckler,* 752 F.2d 1099 (5th Cir. 1985). It remains, however, the claimant's burden to establish the disability. See *Anthony v. Sullivan,* 954 F.2d 289, 295 (5th Cir.1992); see also 42 U.S.C. §§ 416, 423.

■ To determine the existence of an eligible disability there must, initially, be an evaluation of whether the claimant was unable to perform substantial gainful work existing in the national economy because of a medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted, or which can be expected to last, for a continuous period of not less than twelve (12) consecutive months. 42 U.S.C. §§ 416(1), 423(d)(1)(a)LQ, 1614(a)(3)(A); *Barnhart v. Walton,* 535 U.S. 212, 122 S.Ct. 1265, 1272–73, 152 L.Ed.2d 330 (2002); *McQueen v. Apfel,* 168 F.3d at 154; *Greenspan v. Shalala,* 38 F.3d 232, 236, *cert. denied,* 514 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (5th Cir.1995).

■ A five-step sequential process is utilized by the ALJ to determine whether a claimant qualifies for disability benefits. See *20 C.F.R.* § *404.1520(b)-(f)(1998);* *Loza v. Apfel,* 219 F.3d at 390; *Leggett v. Chater,* 67 F.3d at 563. The claimant has the burden of establishing the first four steps of the five-step sequential process by establishing a severe impairment which prevents the claimant from performing past relevant work. In this five-step process, the ALJ considers:

1) whether the claimant is currently engaged in substantial gainful activity, as an individual who is working and engaging in substantial gainful activity will not be found disabled, regardless of the medical findings;

2) whether the claimant has a severe impairment;

3) whether the claimant meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, as such an individual will be considered disabled without consideration of vocational factors;

4) if an individual is capable of performing the work they did in the past, a finding of not disabled must be made; and,

5) if an individual's impairment precludes them from performing their past work work, other factors, including age, education, past work experience and residual functional capacity must be considered to determine if there is any work in the national economy that the individual can perform.

*20 C.F.R.* § *404.1520(b)-(f);* see also, *Carey v. Apfel,* 230 F.3d 131, 134–5 (5th Cir.2000); *Brown v. Apfel,* 192 F.3d at 498; *Leggett v. Chater,* 67 F.3d at 566.

The Commissioner bears the burden as to the fifth step of the process. See *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir.2001). If the Commissioner meets this burden, the claimant must then prove that he or she cannot, in fact, perform the alternate work suggested. See *Waters v. Barnhart,* 276 F.3d 716, 718 (5th Cir.2002); *Carey v. Apfel,* 230 F.3d at 135. If, at any step of the analyses, the ALJ finds that the claimant is or is not disabled, the inquiry is terminated. *Bowen v. Yuckert,* 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Myers v. Apfel,* 238 F.3d at 619.

## DISCUSSION

### The ALJ Did Not Improperly Fail to Seek a Mental Health Consultation to Clarify Claimant's Mental Residual Functional Capacity

■ There is no dispute that Higgins did not engage in substantial gainful activity during the relevant period in question, thereby, meeting the first step of the sequential process. (R. 22) The ALJ determined that Higgin's neurogenic bladder and borderline mental functioning were severe (R. 22), however, at the third step of the process, the ALJ determined that none of Higgin's alleged impairments were severe enough, either individually or in combination with the other, to constitute a disability. (R. 16–22). The ALJ's finding that Higgin's impairments were severe, did not prevent a finding that she had the residual functional capacity to perform work related activities. See *Boyd v. Apfel*, 239 F.3d 698, 706 (5th Cir.2001); see also *20 C.F.R. § 404.1520a(c)(2)*.

■ There is nothing in the record, other than Higgin's continued use of a walker, that indicate that she has any derivative effect from her pelvic fractures.[6] The medical records reflect that in October of 1994, Higgins reported she had no pain in her pelvis, although she indicated she suffered pain in her lower left foot area. (R. 224) Despite this, examinations in 1994 and as late as March 5, 1995, revealed that Higgins had full range of motion of the hip and lower extremities, including the knee and ankle with no clubbing, cyanosis, or edema and that her peripheral pulses, cranial nerves and motor sensations were intact. (R. 224, 203). Additionally, the record fails to reflect that Higgins sought medical treatment beyond March 5, 1995, for either severe pain or any remaining

effects of the pelvic fractures she sustained in 1994; and, Higgins indicated that she no longer takes prescribed medications for pain. (T. 287–288). Subjective complaints of pain must be corroborated by objective medical evidence and in this instance there is no medical source for Higgins' complaints of severe pain or her continued use of a walker. See *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir.2001)(*per curiam*). Furthermore, in those cases, as here, where it is clear that there is no objective medical evidence of constant, unremitting pain, wholly unresponsive to medication or therapeutic treatment, the ALJ properly rejected Higgins' complaints of severe pain as less than credible. See *id.; Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir.1994).

■ Higgins maintains, however, that the ALJ wrongfully determined that she is not disabled as a consequence of failing to properly and fully develop the record by obtaining a consultation from a mental health expert to clarify whether the claimant retained the mental residual functional capacity to perform light, unskilled work. Higgins contends that had a mental health expert been consulted, the ALJ would have determined that she met the criteria set forth by the Listing of Impairments 12.05C and as a consequence, found that she is disabled. See Plaintiff's Motion for Summary Judgment (Entry # 11). The Commissioner urges that the ALJ's decision be upheld as Higgins failed to establish that she was mentally retarded prior to the age of twenty-two; that she manifests any adaptive deficits or, any other physical or mental impairment imposing additional and significant work related limitations. See Defendant's Motion for Summary Judgment (Entry # 13).

---

6. The medical expert, Dr. Osama Nahas, a specialist in internal and occupational medicine, also testified that the medical records offer no reason why Higgins continues to use a cane when walking. (T. 302).

An ALJ has the duty to develop the facts fully and fairly when deliberating a claim for social security benefits. *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir.2000)*(quoting Ripley v. Chater,* 67 F.3d at 557*).* There is nothing in the instant case, however, that would have compelled the ALJ to obtain clarification of the psychological experts' finding that Higgins has a borderline intellectual functioning. Higgins has presented no objective medical source, despite the fact that the ALJ allowed additional time for the submission of such evidence, that disputes the determination that Higgins has less than a borderline intellectual functioning. See *Pierre v. Sullivan,* 884 F.2d 799, 802 (5th Cir.1989); *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir.1977);(R. 16). Nonetheless, Higgins' verbal, performance and full scale IQ scores indicate that she meets the subaverage general intellectual function criteria required by listing 12.05C, which provides:

> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> \*   \*   \*   \*   \*   \*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function

*12.05C, Social Security Regulation, Pt. 404, subpt. P, App. 1*

The determination by the examining psychologist, Dr. Eva Stubits, that Higgins' intellect tested in the mentally deficient range between 60 and 70, with a verbal IQ of 69, performance IQ at 68, and full scale IQ of 66, reflects that Higgins' scores merited consideration, solely with respect to intelligence proficiency, as mentally retarded for disability purposes. Higgins was unable, however, to establish that she had such mental deficiencies, prior to reaching age twenty-two, and, further failed to display the adaptive functioning deficits necessary to meet the impairment listing set forth in 12.05C. Dr. Stubits' findings, in fact dispelled such a conclusion, by determining that despite her intelligence testing, Higgins was found to have an eighth grade reading and fourth grade math capabilities; and, that she could perform better in those areas, than would be expected from her test scores. Furthermore, Higgins' ability to complete high school and two years of college, albeitly not at the top of her class, is a further indication that she does not suffer from adaptive functioning deficits. The determination reached by objective observers, as well as Higgins' own testimony, that she is able to live independently, as she is capable of attending to her basic needs, *i.e.,* dressing herself, prepare simple meals, clean her home; does not require constant supervision; reads avidly and attends church, is further evidence that her condition does not comport with the limitations in adaptive functioning generally described by the Diagnostic and Statistical Manual of Mental (DSM–IV) Disorders (4th ed.) at p. 39, as a result of her limited mental functioning capabilities. (R. 252–255; T.293). Finally, Higgins' ability to work as a housekeeper for a large employer for years prior to her accident, despite her mental limitations, constitutes additional *indicia* militating against a finding that she is adaptive functioning deficient to a degree that would be reasonably considered, disabling. See *e.g., Villa v. Sullivan,* 895 F.2d 1019, 1024 (5th Cir.1990).

Even if Higgins had demonstrated that, prior to reaching twenty-two years of age, she suffered adaptive functioning deficits as a consequence of her subaver-

age general intellectual function, Higgins has been unable to establish that she suffered any other physical or mental impairment imposing an additional and significant work-related limitation of function, as required by impairment listing 12.05C. As discussed, Higgins has failed to establish an objective medical source for her complaints of severe pain. Further, she provided no history of mental or emotional illness or hospitalizations for psychiatric or other mental health illnesses. (R. 252–255). Higgins' neurogenic bladder was surgically repaired following the automobile accident, and in 1997, Higgins reported that she had merely intermittent bladder leakage which was maintained by taking medication and assisted by wearing adult diapers. (R. 173–177; T. 290). In this instance, therefore, the medical record establishes that Higgins' intermittent incontinence, a consequence of her severe impairment, a neurogenic bladder, was not an additional and significant work-related limitation. See *e.g., Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir.1999). Furthermore, Higgins' own testimony that any inconvenience or discomfort rendered by her intermittent incontinence is assisted by the wearing of diapers and controlled by taking medication, persuades against a disability finding. See *Johnson v. Bowen,* 864 F.2d 340, 348 (5th Cir.1988).

The ALJ, therefore, properly found, without need for clarification from further mental health experts, that in reliance upon the medical evidence, including the conclusions of the treating and consulting physicians; the testimony of the medical and vocational experts; and the claimant's testimony as to her capabilities, that Higgins' mental impairment did not, singly or in combination with her other alleged impairments, prevent her from performing the light unskilled jobs found to exist in significant numbers in the national economy.

## Conclusion

Following a review of the entire record, it is recommended that the ALJ's decision be affirmed as the findings comport with applicable legal standards and the substantial evidence and, accordingly, there has not been presented in this matter, a genuine issue necessitating the reversal of the Commissioner's decision. It is, therefore,

**RECOMMENDED** that Higgins' Motion for Summary Judgment (Entry # 11) be **DENIED.** Further, it is

**RECOMMENDED** that the Commissioner's Motion for Summary Judgment (Entry # 13) be **GRANTED.** Additionally, it is

**RECOMMENDED** that Final Judgment be entered in favor of the Commissioner and that this matter be **DISMISSED with prejudice** from the Court's docket.

The Clerk shall file this Memorandum and Recommendations and provide the parties a true copy. The failure to file written objections to the proposed findings and recommendations within ten (10) days of the entry of this Memorandum and Recommendations, may bar an aggrieved party, except upon grounds of plain error, from attacking the proposed factual findings and legal conclusions, on appeal. See *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir.2000); *Douglass v. United Services Automobile Assoc.,* 79 F.3d 1415, 1424 (5th Cir.1996)(*en banc* ); see also *Crawford v. Falcon Drilling Co., Inc.,* 131 F.3d 1120, 1123–4 (5th Cir.1997); and, 28 U.S.C. § 636(b)(1)(C).