IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-30848
_____

CARMEN BROWN,

Plaintiff-Appellant,

v.

KENNETH S. APFEL, COMMISSIONER
OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____
October 7, 1999

Before POLITZ, DeMOSS, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellant Carmen Brown ("Brown") appeals the district court's ruling that retroactive application of the Contract with America Advancement Act ("CAAA"), Public Law 104-121, 110 Stat. 847 (1996), does not violate her due process rights. She also appeals the district court's holding that substantial evidence supports the Administrative Law Judge's ("ALJ") decision denying Brown Supplemental Social Security ("SSI") and Disability Insurance Benefits ("DIB"). We affirm in part, vacate in part, and remand.

## I.     Factual and Procedural Background

Claiming that she was disabled because of lower back pain,

Brown first applied for SSI and DIB in February, 1992.  The Commissioner denied her application in May, 1992; as Brown did not appeal his decision, it became final.[1]

Brown reapplied for SSI and DIB in June, 1994.  The Commissioner again denied her application, and he subsequently refused her request for reconsideration.  Brown then sought an administrative hearing, which she received on July 23, 1996.

At the hearing, Brown testified that she was 41 years old and had a ninth grade education.  She stated that she had only held two jobs in her life, one as a laundry worker and the other as a table busser, for a sum total of five years.  She stopped working altogether after suffering two back injuries within a six week period during the winter of 1989-1990.  When asked by the ALJ if she thought she would eventually get well and return to work, Brown responded, "I really think my working days are over." Brown claimed that her only income was a monthly utility check in the amount of $95.00, though she had been receiving AFDC benefits until three months prior to the hearing.

When asked about her medical problems, Brown asserted that she wore a back brace at night, but had never had a back operation because x-rays, an MRI and a CT scan of her back consistently showed no physiological abnormalities.  Up until

---

[1]  For this reason, res judicata bars Brown's claim for DIB.  See 20 C.F.R. § 404.957(c)(1); see also Muse v. Sullivan, 925 F.2d 785, 787 n.1 (5th Cir. 1991).  Res judicata does not prove an obstacle to her SSI claim because Brown cannot receive benefits for any month prior to the one in which she applied for SSI, which, in this case, is June of 1994.  See 20 C.F.R. § 416.335.  We therefore proceed with the analysis as to SSI benefits only.

January, 1996, Brown stated that she had been seeing Dr. John Watermeier ("Dr. Watermeier") on a monthly basis for shots and pills to ease her pain. She claimed to be in constant pain and testified that she could not sit for more than an hour. She also complained of an inability to sleep more than four or five hours a night, a problem which she attributed to her back pain.

Brown further revealed that she had just been released from a three week stay at Kentwood Pike Psychiatric Unit ("Kentwood"). Brown voluntarily admitted herself because she was feeling suicidal. Though Brown's testimony regarding her depression was sparse, the ALJ permitted her to supplement the record after the hearing with her medical records from Kentwood.

These records revealed that Brown suffered from major depression with suicidal ideations, and that she had a history of drug and alcohol abuse. In a psychiatric evaluation conducted the day after Brown was admitted to Kentwood, Dr. M. Carmen Palazzo wrote "[Brown] is extremely depressed . . . . This is not only fueling but is secondarily being exacerbated by her substance abuse problem." This substance abuse problem involved multiple substances. Brown divulged that she smokes 3 or 4 packs of cigarettes a day. She also confessed to drinking a six pack every day and two ½ pints of alcohol on Fridays; she admits that she has been drinking alcoholic beverages every day since she was 16. Brown additionally conceded that she began using powdered cocaine in her cigarettes for about a year when she was 36, and then started using crack cocaine two years later. Prior to her

admission to Kentwood, Brown's use of crack cocaine escalated.

No discussion of Brown's use of drugs or alcohol occurred during the hearing, but, on the day of the hearing, Brown signed a document acknowledging that if the ALJ found that narcotic or alcohol addiction was at issue, he would make findings as to its materiality to her disability. Brown further waived her right to 20 days advance notice that the ALJ would be making findings on this issue.

The ALJ found that Brown's back impairment did not independently, or in combination with any other ailment, meet Medical Listing 105C in 20 C.F.R. part 4, subpart P, appendix I,[2] and therefore, did not constitute a disability for purposes of obtaining benefits. The ALJ further concluded that Brown was not a credible witness. Nevertheless, the ALJ held that Brown cannot work in the national economy because of "non-exertional limitations stemming from her alcoholism." Because the ALJ found that alcohol abuse was a contributing factor material to Brown's disability, the ALJ held that she was not disabled in accordance with the CAAA.

The district court affirmed the opinion of the ALJ. In an opinion dated July 31, 1998, the court found that the retroactive application of the CAAA was not unconstitutional, and that substantial evidence supported the remainder of the ALJ's

---

[2] This section provides for a finding of disability where the claimant suffers "[p]ain, muscle spasm, and a significant limitation of motion in the spine" and "[a]ppropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss."

4

opinion.

Brown timely filed her appeal.

## II.    Standard of Review

Our review of the Commissioner's decisions with respect to a denial of SSI benefits is limited to ascertaining "whether (1) the [final] decision is supported by substantial evidence and (2) [that] proper legal standards were used to evaluate the evidence." McQueen v. Apfel, 168 F.3d 152, 157 n.2 (5th Cir. 1999) (first alteration in original) (quoting Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam)). "If the [Commissioner's] findings are supported by substantial evidence, they are conclusive and must be affirmed." Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990); see also 42 U.S.C. § 405(g). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "[W]e may not reweigh the evidence in the record, nor try the issues de novo, nor substitute our judgment for that of the [Commissioner], even if the evidence preponderates against the [Commissioner's] decision." Johnson v. Bowen, 864, F.2d 340, 343 (5th Cir. 1988). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." Selders, 914 F.2d at 617. What we strive for is "[j]udicial review [that is] deferential without being so obsequious as to be meaningless." Taylor v. Bowen, 782 F.2d

5

1294, 1298 (5th Cir. 1986).

### III.    Retroactivity

Brown argues that retroactive application of the CAAA, which amends 42 U.S.C. § 1382c(a)(3)(J),[3] violates her Fifth Amendment Due Process rights.  The Commissioner counters that Brown has no vested rights in SSI benefits, and therefore, the CAAA may constitutionally be applied retroactively to her.

The only authority Brown cites in support of her position is Landgraf v. USI Film Prods., 511 U.S. 244 (1994).  She focuses on the following language: "[R]etroactive statutes raise particular concerns.  The Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration.  Its responsivity to political pressures poses a high risk that it may be tempted to use retroactive legislation as a means of retribution against unpopular groups or individuals."  Id. at 266.  Alcoholics and drug addicts, Brown argues, are an unpopular group now targeted by the CAAA.

On closer examination, however, Landgraf seems to provide little support for Brown's contention.  First, the statute at issue in Landgraf was one in which the Congressional intent with respect to retroactivity was unclear; here, it is manifest.  See PL 105-33, § 5525, 111 Stat. 251, 624 (1997) (clarifying that the CAAA applies to cases pending at the time of its enactment).  And

---

[3]    The text of the statute at issue states: "An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled."

6

"where the congressional intent is clear, it governs." <u>Kaiser Aluminum & Chem. Corp. v. Bonjorno</u>, 494 U.S. 827, 837 (1990); <u>see also</u> <u>Landgraf</u>, 511 U.S. at 280 ("When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules.").

Second, the legislative history in <u>Landgraf</u> revealed that President Bush had vetoed an earlier version of the statute because of its retroactivity provisions, and Congress failed to override the veto. <u>Landgraf</u>, 511 U.S. at 255-56. Here, the legislative record indicates a clear intent to revoke cash benefits from drug and alcohol abusers as soon as possible. <u>See</u> H.R. Rep. No. 104-379, 1st Sess., at 17 (1995) ("[The result of the current law] is a perverse incentive that affronts working taxpayers and fails to serve the interest of addicts and alcoholics, many of whom use their disability checks to purchase drugs and alcohol[.]").

Finally, as stated by the <u>Landgraf</u> Court, "[t]he largest category of cases in which we have applied the presumption against statutory retroactivity has involved new provisions affecting contractual or property rights, matters in which predictability and stability are of prime importance." <u>Landgraf</u>, 511 U.S. at 271. But "social security benefits[] are not contractual and may be altered or even eliminated at any time." <u>United States R.R. Retirement Bd. v. Fritz</u>, 449 U.S. 166, 174

7

(1980).  Brown had no vested property or contract rights in social security benefits, and thus, whatever deprivation Brown suffered because of the CAAA, it was not severe enough to be constitutionally cognizable.  Accord Torres v. Chater, 125 F.3d 166 (3d Cir. 1997).  We therefore affirm the district court's ruling that retroactive application of the CAAA is constitutional.

## IV.     Burden of Proof

Having ascertained that applying the CAAA to Brown is constitutional, we must now confront the mechanics of the statute's application.  Brown argues that the Commissioner bears the burden of proving that drug or alcohol abuse is a contributing factor material to her disability.  She asserts that nothing in the CAAA alters the traditional allocation of the burden of proof, which shifts to the Commissioner after the claimant proves that she is unable to perform her past relevant work.  Brown maintains that he has not carried that burden.  The Commissioner did not address the argument.

The question of who bears the burden of proof on this inquiry is one of first impression in this circuit.  An examination of where the other burdens of proof lie in these administrative proceedings is helpful in reaching an answer.  The burden of proof in SSI administrative hearings rests predominantly on the claimant.  Specifically, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or

8

mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Toward that end, the claimant and the ALJ conduct a five step analysis that asks:

> 1) whether the claimant is presently engaging in substantial gainful activity, 2) whether the claimant has a severe impairment, 3) whether the impairment is listed, or equivalent to an impairment listed in appendix I of the regulations, 4) whether the impairment prevents the claimant from doing past relevant work, and 5) whether the impairment prevents the claimant from performing any other substantial gainful activity.

Leggett v. Chater, 67 F.3d 558, 564 n.2 (5th Cir. 1995); see also 20 C.F.R. § 416.920(b)-(f). The claimant bears the burden of proof on the first four parts of the inquiry. Leggett, 67 F.3d at 564. The burden shifts to the Commissioner on the fifth prong. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994). This shifting of the burden of proof to the Commissioner is neither statutory nor regulatory, but instead, originates from judicial practices. See generally Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987) ("The shifting of the burden of proof is not statutory, but is a long-standing judicial gloss on the Social Security Act.").

Brown maintains that the CAAA and the regulations implementing it, see 20 C.F.R. §416.935, create a "sixth step" during which the Commissioner must show "whether [the claimant] would still . . . [be] disabled if [the claimant] stopped using drugs or alcohol." Id. § 416.935(b)(1). Brown's construction derives some credence from the regulations, which mandate

9

consideration of whether drug addiction or alcoholism is a contributing factor material to the determination of disability only after the ALJ finds the claimant disabled at step 5.[4]

Nevertheless, Brown's argument fails. First, the CAAA amends 42 U.S.C. § 1382c(a)(3)(J), the definition of disability for SSI. Unquestionably, proving disability is Brown's burden, and any amendment to the definition of disability logically impacts her burden. Second, the regulations at 20 C.F.R. § 416.920 mandate the five part inquiry. Any addition of a sixth step would have to amend these regulations, something that the CAAA did not do.

Third, the Commissioner's burden arises only from a judicial construction of the Social Security statute. Any expansion of this burden ought to have a compelling justification or the clear intent of Congress undergirding it. Here Brown cites no authority for her position, nor does any policy justification seem to support her argument.

Finally, and most pragmatically, Brown is the party best suited to demonstrate whether she would still be disabled in the absence of drug or alcohol addiction. We are at a loss to discern how the Commissioner is supposed to make such a showing, the key evidence for which will be available most readily to Brown. We thus hold, for the first time, that Brown bears the burden of proving that drug or alcohol addiction is not a

---

[4] "<u>If</u> we find that you are disabled . . . [<u>then</u>] we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a) (emphasis added).

10

contributing factor material to her disability.

Brown did not carry this burden. The record suggests that Brown did not know of the change in the law until the day of the hearing when she signed a document acknowledging that the ALJ would be making findings about drug and alcohol addiction and waiving advance notice of that fact. Her attorney stated at the hearing that he "only became aware of [her hospitalization at Kentwood] last week." When the ALJ asked Brown's attorney what, in his opinion, was Brown's major reason for disability, her attorney responded, "[U]p until last week I thought it was because of her back and her neck. The diagnostic impression here is . . . she had depression. What I would like to do if I could is have a couple of weeks to get these full records for you[.]" Later in the hearing, her attorney again commented, "This depression thing is something that is brand new, and I don't know much about it. I don't have the medicals so it's hard for me to comment on the extent to which that's disabling." Neither Brown's attorney nor the ALJ ever raised the issue of chemical dependency at the hearing. Moreover, while the medical records from Kentwood clearly reveal that Brown suffers from multiple chemical addictions, nowhere in these records do any of Brown's doctors express an opinion as to what Brown's condition would be if she ceased abusing drugs or alcohol. They do suggest, however, that Brown may have multiple causes for her depression, including stress about her finances, lack of anti-depressant medication, chronic back pain, and abuse as a child and adult.

11

Quite simply, not a shred of evidence in the record casts any light on whether Brown's disabling depression would subside if she stopped consuming alcohol and cocaine.

Normally, if Brown failed to carry her burden of proof, she would lose. Or, if she failed to present evidence sufficient to allow the ALJ to make a determination supported by substantial evidence, the ALJ could order a consultative examination pursuant to 20 C.F.R. § 416.917. But here, Brown had no notice or knowledge that she had to carry this burden of proof. The waiver form she signed on the day of the hearing made no mention of burdens of proof. From her appellate briefs, Brown obviously thought the burden was on the Commissioner. Moreover, the ALJ neither mentioned the burden of proof in his opinion, nor ordered a consultative examination to aid his inquiry.

In short, for the entirely understandable reason that we had not yet spoken on this question, the ALJ failed to place the burden of proof on Brown, and Brown failed to carry it. We therefore vacate the portion of the district court's opinion that holds that substantial evidence supports the ALJ's finding that alcohol abuse is a contributing factor material to Brown's disability, and we remand for further evidentiary gathering. See Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998) (remanding because the claimant was not given an opportunity to present evidence as to whether his disability would have remained if he stopped smoking marijuana).

How a claimant is to answer the question of whether alcohol

or drug abuse is a contributing factor material to his disability is also a question of first impression in this circuit. We therefore provide the following guidance on remand. "Materiality," for purposes of this inquiry, has a very precise definition. Specifically, drug or alcohol abuse is material to a disability if the ALJ would not "find [the claimant] disabled if [the claimant] stopped using drugs or alcohol." 20 C.F.R. § 416.935(b)(1). Of course, evidence sufficient to support an ALJ finding on this issue will be strongly dependent upon the facts in each case. In this instance, the bare record itself provides no guidance as to Brown's prognosis, with respect to depression, if she ceased her chemical dependency. Though the record suggests that Brown's abuse of narcotics both exacerbated and was itself fueled by her depression, that fact is not sufficient to imply the inverse: i.e., that cessation of narcotic and alcohol usage would abate the depression. The record simply contains too many other possible reasons for Brown's depression. Therefore, assuming that Brown is still addicted to drugs and alcohol at the time of her hearing on remand, she must introduce evidence that supports a finding in her favor that she would still be disabled by depression even if she stopped using drugs and alcohol. Of course, the ALJ has the option of ordering a consultative examination to guide his determination on remand.

## V.    Substantial Evidence

Brown raises a number of other arguments. She maintains

13

that the ALJ improperly discounted the testimony of her treating physician, Dr Watermeier.  She complains that the ALJ was biased.  And she insists that her back ailment meets Medical Listing 105C in 20 C.F.R., part 4, subpart P, appendix I.  The Commissioner counters that the ALJ was entitled to discount the testimony of Brown's treating physician, and that the back ailment does not meet the listing.[5]

After a thorough review of the record, we affirm the lower courts with respect to all these arguments.  First, "[t]he treating physician's opinions are far from conclusive." Greenspan, 38 F.3d at 237.  For good cause shown, the ALJ may discount, or even disregard entirely, the opinion of the treating physician.  Id.  Here, the ALJ had good cause to disregard Dr. Watermeier's opinion: his assessment was unsupported by the record.  Every other doctor Brown consulted and objective medical test Brown underwent indicated that Brown had no physiological basis for her back complaint.  Therefore, the district court did not err in finding that substantial evidence supported the ALJ's opinion.

Second, Brown's allegation of bias stems from the following remark in the ALJ's opinion: "[Brown's treating physician's] conclusion is not substantiated by the medical evidence and is given little weight.  Apparently he was

---

[5]   The Commissioner also argues that we lack the jurisdiction to address the question of bias because Brown did not raise the issue before the Appeals Council.  This is not true.  Brown clearly and unmistakably raised the issue of bias before the Appeals Council in a letter dated October 29, 1996.  We therefore have jurisdiction to resolve the question of bias.

14

attempting to help the claimant get benefits because of his relationship with her." Brown claims that this shows that the ALJ was basing his decision on irrational factors. We disagree.

"[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge" unless "they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555 (1994); see also Meadows v. SEC, 119 F.3d 1219, 1227 (5th Cir. 1997). The ALJ's finding does not amount to bias under this standard. Dr. Watermeier had seen Brown for seven years on a monthly basis. That Dr. Watermeier had a professional relationship with Brown is undisputed. Nothing in the ALJ's opinion necessitates the assumption that the ALJ thought the relationship between Brown and Dr. Watermeier was anything other than professional. We therefore find that the ALJ was not biased, and that his conclusion was supported by substantial evidence.

Finally, Brown argues that her back ailment meets Medical Listing 105C in 20 C.F.R., part 4, subpart p, appendix I. After reviewing the record, we agree with the district court that substantial evidence supports the ALJ's conclusion that her back ailment does not meet the listing. Only two sources of evidence support the proposition that Brown has a serious back ailment: Brown's testimony about her pain and Dr. Watermeier's diagnosis. The ALJ discredited Brown's testimony of constant pain because

15

she engaged in daily activities like shopping, attending church, and playing bingo; additionally, she did not appear to be in any discomfort at the hearing. The ALJ further discounted Brown's testimony because every objective medical assessment revealed no physiological basis for her pain. This was not an abuse of discretion. See Griego v. Sullivan, 940 F.2d 942, 945 (5th Cir. 1991) ("It was . . . within the discretion of the ALJ to discount [the claimant's] complaints of pain based upon the medical reports combined with her daily activities and her decision to forgo certain medication.").

The ALJ's refusal to credit Dr. Watermeier's diagnosis was, for reasons stated above, likewise not an abuse of discretion. Therefore, no credible evidence suggests that Brown's back ailment meets the listing. Finally, Brown's attorney conceded at that hearing that he was "not sure we have a 105c on the back." Thus, Brown herself knew that her ailment did not meet the listing. We therefore affirm the district court's decision on this point.

## VI. Conclusion

We AFFIRM the district court's conclusion that retroactive application of the CAAA is constitutional.

We VACATE the part of the district court's opinion that finds that substantial evidence supports the ALJ's conclusion that alcohol abuse is a contributing factor material to Brown's disability. We REMAND with orders to hold another administrative hearing in which Brown will bear the burden of proving that her

16

disability would remain in the absence of chemical dependency.

And finally, we AFFIRM the district court's findings that substantial evidence supported the ALJ's decision to discount Dr. Watermeier's testimony, that the ALJ was not biased, and that Brown's back ailment did not meet Medical Listing 105C in 20 C.F.R., part 4, subpart P, appendix I.

PARTIALLY AFFIRMED, PARTIALLY VACATED, and REMANDED.