# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 19, 2011

No. 11-20115
Summary Calendar

Lyle W. Cayce
Clerk

ARVIL T. LUCKEY,

Plaintiff–Appellant

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURTIY,

Defendant–Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:09-CV-3927

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Avril T. Luckey ("Luckey") appeals the denial of social security disability benefits by the Commissioner of the Social Security Administration ("Commissioner"). Luckey sought review of the Commissioner's denial of benefits in the United States District Court for the Southern District of Texas, pursuant to 42 U.S.C. § 405(g). The district court affirmed the Commissioner's final administrative decision.

---

[*] Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

Because we find that the Administrative Law Judge ("ALJ") applied the correct legal standards and issued an opinion supported by substantial evidence of record, we AFFIRM the district court's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Luckey worked as an outside machinist/millwright in the petrochemical industry for almost 31 years. He was first hired in October 1967, the year he graduated from high school, and he worked at the same job until August 1, 1998. Based on his work history, Luckey was insured until December 31, 2003, his date last insured for purposes of social security disability benefits.[1]

Luckey filed his current application for benefits on September 8, 2004. He claimed that his disability due to high blood pressure, diabetes, degenerative bone disease, and herniated discs began on October 1, 2002. He later amended his disability onset date to January 23, 2003. His application was denied at the initial and reconsideration levels, after which Luckey sought a hearing before an ALJ. The ALJ issued an unfavorable decision on July 28, 2006, and Luckey filed for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

The district court remanded the case to the ALJ on July 30, 2008, directing that the ALJ properly evaluate the opinion of Luckey's treating physician, Alfredo J. Nodarse, M.D. ("Dr. Nodarse"). The ALJ conducted a new hearing on November 19, 2008, after which he issued a second unfavorable decision on February 19, 2009. Once again, Luckey filed a civil action for judicial review of the Commissioner's decision. The district court affirmed the Commissioner's

---

[1] The Social Security Administration regulations contain a formula for calculating a claimant's insured status. *See* 20 C.F.R. § 404.130. A claimant must establish disability on or before the date last insured in order to be entitled to a period of disability or disability insurance benefits. *See* 20 C.F.R. § 404.131; *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

denial of benefits, and it granted summary judgment in the Commissioner's favor.[2]  Luckey filed a Notice of Appeal with this Court on February 17, 2011.

## STANDARD OF REVIEW

"In the Fifth Circuit, appellate review [of a Commissioner's denial of benefits] is limited to (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *see also Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990); 42 U.S.C. § 405(g).  As long as substantial evidence exists to support the Commissioner's decision, it must be affirmed.  *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000).  "Substantial evidence" is defined as "more than a scintilla and less than a preponderance." *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)).  It is "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  This Court may not reweigh the evidence, try the case *de novo*, or substitute its judgment for that of the Commissioner, "even if the evidence preponderates against the [Commissioner's] decision." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (quoting *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988)).  "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders*, 914 F.2d at 617 (citation omitted).

This Court reviews a district court's grant of summary judgment *de novo* and applies the same standard as the district court.  *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).  Under that standard, summary

---

[2] In both instances that Luckey filed a civil action for judicial review of the Commissioner's decision, the parties consented to the jurisdiction of a United States Magistrate Judge.

judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When reviewing a motion for summary judgment, the Court construes all the evidence and reasonable inferences in the light most favorable to the nonmoving party.  *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010) (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009)).

## ANALYSIS

Luckey raises two issues on appeal.  First, he argues that the ALJ employed improper legal standards by not giving "controlling weight" to the opinion of Luckey's longtime physician, Dr. Nodarse.  Second, he claims that the ALJ should have consulted a medical advisor to assist in determining Luckey's disability onset date.

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A five-step analysis is used to determine whether a claimant is disabled.  *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

> "First, the claimant must not be presently working.  Second, a claimant must establish that he has an impairment or combination of impairments which significantly limit [his] physical or mental ability to do basic work activities.  Third, to secure a finding of disability without consideration of age, education, and work experience, a claimant must establish that his impairment meets or equals an impairment in the appendix to the regulations.  Fourth, a claimant must establish that his impairment prevents him from doing

> past relevant work.  Finally, the burden shifts to the [Commissioner] to establish that the claimant can perform the relevant work.  If the [Commissioner] meets this burden, the claimant must then prove that he cannot in fact perform the work suggested."

*Waters*, 276 F.3d at 718 (quotation marks and citation omitted).  Thus, "the claimant bears the burden of proof with respect to the first four steps of the analysis, with the burden shifting to the Commissioner for the final step." *Id.*; *see also Brown*, 192 F.3d at 498; *Bowen*, 864 F.2d at 348.  "A finding that the claimant is disabled or not disabled at any point in the five-step process is conclusive and terminates the Secretary's analysis." *Id.* at 344 (citations omitted).

Here, the ALJ set out the above five-step process, and then analyzed Luckey's claim accordingly.  He found that under step three, Luckey did not have an impairment or combination thereof equal to one of the listed impairments in 20 C.F.R. §§ 404.1525-26.  He also found that while Luckey could not perform his past work as a millwright, which is classified as heavy work, he had the residual functional capacity to perform light work, as defined by 20 C.F.R. § 404.1567(b).  In making these findings, the ALJ considered Luckey's symptoms, as well as the objective medical evidence and other evidence provided.  He found that Luckey's statements regarding his symptoms were not consistent with the ALJ's assessment of his residual functional capacity, because Luckey's hypertension and diabetes were well-controlled by medication, and during the relevant period his back pain responded to conservative treatment, and did not worsen until after his date last insured.  The ALJ also specifically addressed Dr. Nodarse's

opinion that Luckey's disability had begun before his date last insured, and he found that the opinion was not supported by the record.

Luckey argues correctly that a treating physician's opinion, such as that of Dr. Nodarse, often is given "controlling weight." The ALJ addressed this contention, however, noting that under the Social Security regulations, a treating physician's opinion on the nature and severity of a claimant's impairment receives "controlling weight" only where it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). The ALJ found that Dr. Nodarse's opinion was inconsistent with the remainder of the record, including Dr. Nodarse's own treatment notes, the conservative treatment he recommended for Luckey, the improvement of Luckey's back pain with chiropractic treatment, and the fact that Dr. Nodarse did not refer Luckey to an orthopedist until the summer of 2004, six months after his date last insured. Therefore, the ALJ did not give Dr. Nodarse's opinion "controlling weight."

Luckey argues in the alternative that, even if Dr. Nodarse's opinion was not given controlling weight, it should have been accorded great weight. He claims that the ALJ failed "to clearly set forth specific reasons for the weight given, or not given, to [Dr. Nodarse's] treating opinion." Plaintiff-Appellant's Br. at 35. However, a review of the ALJ's decision shows that he very clearly set out the reasons that he felt Dr. Nodarse's opinion was "entitled to little weight." ALJ Opinion at 6. The ALJ listed the factors he was required to apply, including "(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is of a specialist; and (6) any other factors which

tend to support or contradict the opinion." *Id.* (citing 20 C.F.R. § 404.1527(d)(1)-(6)).  The ALJ then discussed facts that pertained to each factor, including objective medical evidence from the record, before discounting Dr. Nodarse's opinion.  *See Loza*, 219 F.3d at 395 ("The ALJ cannot reject a medical opinion without an explanation."); *Newton*, 209 F.3d at 456 (stating that "an ALJ is required to consider each of the § 404.1527(d) factors before declining to give any weight to the opinions of the claimant's treating specialist.").  Luckey is therefore plainly incorrect that the ALJ failed to support his position as to the weight due Dr. Nodarse's opinion.

It is true that "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  However, "[f]or good cause shown, the ALJ may discount, or even disregard entirely, the opinion of the treating physician." *Brown*, 192 F.3d at 500 (internal citation omitted); *see also Newton*, 209 F.3d at 456.  As in *Brown*, the ALJ here had good cause to reject Dr. Nodarse's opinion regarding Luckey's disabled status because that opinion was unsupported by the record.  *Id.*  It is the Commissioner who must ultimately determine whether a claimant is disabled, and not the claimant's physician.  *Spellman*, 1 F.3d at 364.  Furthermore, the ALJ, and not this Court, must decide what weight to give the proffered medical evidence.  *Bowen*, 864 F.2d at 343.  Luckey seeks to have this Court reweigh the evidence and substitute our judgment for that of the Commissioner, but that is neither our place nor our prerogative.  *Brown*, 192 F.3d at 496.  We find that the ALJ applied the proper legal standards in evaluating Dr. Nodarse's opinion, and that the ALJ's decision

7

that Dr. Nodarse's opinion was entitled to little weight was supported by substantial evidence. Thus, the decision must stand.

Luckey's second argument–that the ALJ should have consulted a medical advisor in determining the onset of Luckey's disability–is equally unavailing. Luckey bases this argument on cases where the medical evidence regarding onset date is ambiguous. *See*, *e.g.*, *Spellman*, 1 F.3d at 362. However, the ALJ here found that there was substantial evidence indicating the onset of Luckey's disability occurred in 2004, after his date last insured of December 31, 2003. Outside of a retrospective opinion by Dr. Nodarse that Luckey's back condition constituted a disability in 2003, the ALJ found that there was no medical evidence that Luckey suffered from a disability during that time period. *See Id.* at 361 (stating that "the medical evidence is the primary element in the determination of onset of disability."). Thus, Luckey's disability onset date was not ambiguous, such that the ALJ needed to consult a medical advisor.

Luckey also argues that the ALJ incorrectly discounted medical evidence from the period after Luckey's date last insured in determining his disability onset date. Subsequent medical evidence is relevant "because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status." *Loza*, 219 F.3d at 394 (quotation marks and citation omitted). Luckey had an MRI of his lumbar spine in June 2004 that showed lumbosacral spondylosis with degenerative disc disease, L5-S1 disc herniation, bilateral hip arthritis, and bilateral knee arthritis. In a letter written in 2006, Dr. Nodarse stated that the conditions diagnosed with the MRI predated the test, and that based on the results, Luckey would have been capable of no more than sedentary work in 2003. However, Luckey presented no evidence outside of his own testimony and Dr. Nodarse's retrospective opinion to support a finding that he was disabled prior to his date last insured. The ALJ cited notes from Luckey's

chiropractor–wherein Luckey stated that his pain had greatly improved with treatment between August and December 2003–that contradicted Luckey's testimony at the hearing regarding the onset of his disability. *See Scott*, 770 F.2d at 485 (stating that it is the ALJ's place to determine the credibility of medical and lay witnesses). And while retrospective medical diagnoses may constitute relevant evidence of the onset of disability, they must at least be "corroborated by lay evidence relating back to the claimed period of disability." *Likes v. Callahan*, 112 F.3d 189 191 (5th Cir. 1997) (per curiam). Here, the only evidence corroborating Dr. Nodarse's retrospective medical opinion regarding the MRI results was Luckey's testimony at the hearing; Luckey presented no other evidence, medical or lay, supporting Dr. Nodarse's opinion that the onset of his disability occurred in January 2003.

The ALJ's opinion that Luckey was not disabled on his date last insured is supported by substantial evidence. There is no requirement that the ALJ consult an additional medical advisor where, as here, the onset date of the claimant's disability is not ambiguous. Furthermore, the ALJ gave subsequent medical evidence its due weight.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.