# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 8, 2012

No. 12-30216
Summary Calendar

Lyle W. Cayce
Clerk

DAVID LLOYD,

Plaintiff-Appellant

v.

MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana
(10-CV-920)

Before BENAVIDES, STEWART, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

David Lloyd filed an application for disability insurance benefits in July 2006, which claimed that he had been unable to work since November 2005 because of a "disabling condition." In November 2009, the Commissioner rejected Lloyd's asserted date of the onset of his disability, but concluded that Lloyd was disabled beginning on August 1, 2009. Lloyd then unsuccessfully

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-30216

challenged the Commissioner's decision in federal district court. For the following reasons, we affirm the district court's judgment.

## I.

## A.

David Lloyd visited William H. Morrison, M.D., on March 29, 2006 after noticing blood in his urine and experiencing lower back pain. During this visit, Lloyd, who at the time was 48 years old, requested an appointment to see a cardiologist. After conducting a physical examination, Dr. Morrison prescribed Cipro and set up an appointment with Assad Mouhaffel, M.D.

Dr. Mouhaffel examined Lloyd on May 1, 2006, and noted that Lloyd complained of chest pain, shortness of breath, easy fatigability, and nausea. Later that week, Dr. Mouhaffel conducted a nuclear stress test. According to Dr. Mouhaffel's notes, the result of Lloyd's stress test was abnormal, and Lloyd was diagnosed with a ventricular septal defect.[1]

Approximately two months later, on July 5, 2006, Lloyd filed an application for disability insurance benefits. In his application, Lloyd stated that he had been unable to work "because of his disabling condition" since November 1, 2005.

On August 24, 2006, consultative examiner Ken Barrick, M.D., examined Lloyd. In his report, Dr. Barrick acknowledged Lloyd's congenital heart condition; indicated that Lloyd was complaining of daily chest pain, shortness of breath, and numbness in both arms and both legs; and noted that Lloyd claimed to have had a heart attack in 2000. In concluding his report, Dr. Barrick observed that, although Lloyd complained of functional problems due to his

---

[1] "A ventricular septal defect (VSD), also called a hole in the heart, is a common heart defect that's present at birth (congenital). The defect involves an opening (hole) in the heart forming between the heart's lower chambers, allowing oxygen-rich and oxygen-poor blood to mix." Mayo Clinic, http://www.mayoclinic.com/health/ventricular-septal-defect/DS00614 (last visited July 16, 2012).

2

heart condition, there were "no clinical exam findings to support [his] claim." Additionally, Dr. Barrick questioned Lloyd's assertion that he had experienced a heart attack on the grounds that no medical documentation supported Lloyd's assertion.  Dr. Barrick concluded that despite Lloyd's complaints, he believed that Lloyd should have been "able to sit, walk, and/or stand for a full workday with adequate rest breaks, lift/carry objects of at least 20 pounds, hold a conversation, respond appropriately to questions, [and] carry out and remember instructions."

The following month, Susan Snell, a medical consultant, completed a Physical Residual Functional Capacity Assessment in connection with Lloyd's application for disability benefits.  In this assessment, Snell indicated that Lloyd could occasionally lift 50 pounds, frequently lift 25 pounds, and stand or walk with normal breaks for a total of about 8 hours in an 8-hour workday.  Despite the evidence in Lloyd's file revealing a minor heart abnormality and atypical chest pain, Snell concluded that the evidence before her did not establish that Lloyd's physical restrictions were as serious as Lloyd described them.

Lloyd was admitted to the hospital on April 15, 2007 after complaining of chest pain.  In his discharge report, Lloyd's physician, Dr. Mouhaffel, noted that he had previously seen Lloyd.  This report also indicated that Lloyd's chest pain "ha[d] resolved."

At the end of the ensuing month, Dr. Mouhaffel filled out a Residual Functional Capacity Questionnaire that was sent to him.  In this form, which was submitted in May 2007, Dr. Mouhaffel restated his previous VSD diagnosis, and noted that Lloyd experienced fatigue, nausea, weakness, and had difficulties remembering.  He also opined that Lloyd needed to shift positions at will from sitting, standing, or walking; take unscheduled rest periods during the day; and elevate his legs with prolonged sitting.  Dr. Mouhaffel also indicated that Lloyd could only rarely lift 20 pounds, climb ladders, or go up stairs.  According to this

No. 12-30216

form, Dr. Mouhaffel estimated that, on average, Lloyd would be ill about four days a month as a result of his ailments.

**B.**

After his application was initially denied, Lloyd requested a hearing before an administrative law judge. His request for a hearing was granted, and Lloyd received his hearing on August 4, 2008. During this hearing, Lloyd testified about his physical limitations, the consequences of physical overexertion, and the blackouts he experienced. His wife also provided testimony regarding the blackouts. Two months after the hearing, the administrative law judge issued a written decision denying Lloyd's application for benefits.

Lloyd subsequently appealed the denial of benefits to the Appeals Council. On April 24, 2009, the Appeals Council vacated the hearing decision and remanded Lloyd's case back to an administrative law judge for clarification of the relationship between Dr. Mouhaffel's May 2006 treatment notes and his responses to the May 2007 Residual Functional Capacity Questionnaire.

In response to the remand order, the Social Security Administration sent Dr. Mouhaffel a letter requesting that he provide a "[m]edical records update." Dr. Mouhaffel replied to this request in July 2009 by completing a Social Security Administration form entitled "Medical Source Statement of Ability To Do Work-Related Activities (Physical)." On the first page of this form, Dr. Mouhaffel provided a handwritten notation indicating that Lloyd had not been to his office since December 2007, and stating that his responses to the form were based on the information available to him in December 2007.

In this form, Dr. Mouhaffel indicated that Lloyd could continuously lift and carry 20 pounds; sit, stand, and walk without interruption for four hours; and frequently perform various postural activities, such as climbing stairs, crouching, and crawling. Dr. Mouhaffel also opined that Lloyd could perform

No. 12-30216

activities like shopping, walking at a reasonable pace on rough or uneven surfaces, and using public transportation.

The month after Dr. Mouhaffel completed this form, Lloyd was treated in the emergency room for complaints of chest pain and shortness of breath. After being admitted, Lloyd was stabilized on medications and released on August 18, 2009.

## C.

An administrative law judge conducted a second hearing in connection with Lloyd's application on September 10, 2009. At this hearing, Lloyd testified about his past work experience, his various physical ailments, and why those ailments prevented him from working. Along with testimony from Lloyd's wife, the administrative law judge also heard testimony from Charles Smith, a vocational expert, who provided responses to various hypotheticals that explored the boundaries of the type of work Lloyd could perform.

In November 2009, the administrative law judge issued a written decision in which he concluded that Lloyd was disabled beginning on August 1, 2009. In arriving at this conclusion, the administrative law judge rejected Lloyd's assertion that he was disabled beginning on November 1, 2005. Notably, the administrative law judge determined that prior to August 1, 2009, Lloyd had the residual functional capacity to perform certain "light work," as the term is defined by the applicable regulations.

To support this determination, the administrative law judge referenced various portions of the testimony Lloyd provided, along with the medical documentation in the record. After reviewing the documentation, the administrative law judge opined that "any possible previous inconsistencies in the medical records" were resolved by the post-remand "Medical Source Statement" form Dr. Mouhaffel filled out in July 2009. In addition, the administrative law judge stated that the July 2009 form was not only more

consistent with Dr. Mouhaffel's own records, "which had failed to reflect any limitations" prior to the May 2007 Residual Functional Capacity Questionnaire, but was also in greater harmony with the reports provided by Dr. Barrick and Susan Snell.

In short, the administrative law judge concluded that his determination that Lloyd could perform certain light work prior to August 1, 2009 was supported by the medical documentation contained in the record. It was on this basis that he ruled that Lloyd was not disabled from his alleged onset date of November 1, 2005 through August 1, 2009.

Lloyd subsequently sought review of this ruling in federal court. On December 7, 2011, a magistrate judge recommended that the administrative law judge's decision be affirmed. The following month, the district court concluded that the magistrate judge's recommendation was correct, affirmed the administrative law judge's decision, and dismissed Lloyd's suit. Lloyd now appeals the district court's judgment.

## II.

"In reviewing the Commissioner's determination, we consider only whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler v. Astrue*, 501 F.3d 446, 447 (5th Cir. 2007) (citation omitted). "Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). When conducting this review, "[w]e may not reweigh the evidence or substitute our judgment for that of the Commissioner." *Id.* (citation omitted). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (internal quotation marks and citation omitted).

No. 12-30216

On appeal, Lloyd contends that there is "no substantial evidence" to support the adverse portion of the administrative law judge's decision. Before addressing this contention, we will first lay out the applicable legal framework.

"The Social Security Act provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Loza v. Apfel*, 219 F.3d 378, 390 (5th Cir. 2000) (citation omitted). The Commissioner applies a five-step sequential evaluation process for deciding whether an individual is disabled. "The first two steps involve threshold determinations that the claimant is not presently engaged in substantial gainful activity and has an impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities." *Id.* (citing 20 C.F.R. §§ 404.1520, 404.1520(b)-(c), 416.920, 416.920(b)-(c)). "In the third step, the medical evidence of the claimant's impairment(s) is compared to a list of impairments presumed severe enough to preclude any gainful activity." *Id.* (citing 20 C.F.R. pt. 404, subpt. P, App. 1 (pt. A) (1999)). "If the claimant's impairment matches or is equal to one of the listed impairments, he qualifies for benefits without further inquiry." *Id.* (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)).

If the person cannot qualify under the listings, the evaluation proceeds to the fourth and fifth steps. Under the fourth step, the Commissioner must consider whether "the impairment prevents the claimant from doing past relevant work." *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (citing 20 C.F.R. § 404.1520). "The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner for the fifth step." *Id.*

For the fifth step, "the Commissioner must show that the claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id.* (citing *Chaparro v. Bowen*, 815 F.2d 1008, 1010 (5th Cir. 1987)).

"Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding." *Id.* (citation omitted).

Here, Lloyd challenges the administrative law judge's conclusion at step five of this analysis. According to him, the administrative law judge's finding at step five was impermissibly based on the post-remand "Medical Source Statement" form Dr. Mouhaffel filled out in July 2009. This form, he argues, has "several defects," such as conflicting with Dr. Mouhaffel's May 2007 report and being made without examining Lloyd, which undermine its reliability and credibility. Given these alleged defects, Lloyd maintains that the administrative law judge's reliance on this report was improper. Without this report, Lloyd asserts that there is "no substantial evidence" in the record to support the administrative law judge's finding at step 5 that Lloyd could perform certain light work prior to August 1, 2009.

We reject Lloyd's assertion. In conducting our review, we grant great deference to the administrative law judge's decision and can only disturb his determination if we cannot find substantial evidence in the record to support his decision, or if we conclude that he made an error of law. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Contrary to what Lloyd contends, the administrative law judge's decision with respect to step 5 of the applicable analysis is supported by substantial evidence. Dr. Mouhaffel's July 2009 report, combined with the reports provided by Dr. Barrick and Susan Snell, provide a basis for a reasonable mind to conclude that Lloyd was able to perform certain

light work prior to August 1, 2009.[2]  We are therefore unable to unsettle the administrative law judge's decision.

At its core, Lloyd's appeal asks us to place the content of Dr. Mouhaffel's May 2007 report above the rest of the administrative record.  Doing so, however, would be tantamount to resolving a conflict in the evidence in his favor.  Our case law makes clear that we are unable to satisfy Lloyd's request.  *See Brown*, 192 F.3d at 496 (noting that conflicts in the evidence are for the Commissioner, and not the courts, to resolve).

## III.

For these reasons, we AFFIRM the district court's judgment.

---

[2]  The applicable regulations define "light work" as follows:

> (b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. 404.1567(b).