# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
June 28, 2016

Lyle W. Cayce
Clerk

No. 15-60549
Summary Calendar

MICHAEL FITCH, Surviving Spouse of Ellen Fitch, Deceased,

Plaintiff - Appellant

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL
SECURITY, in her Official Capacity as Acting Commissioner, Social Security
Administration,

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 2:14-CV-26

Before SMITH, BENAVIDES, and HAYNES, Circuit Judges.

PER CURIAM:*

Michael Fitch, surviving spouse of Ellen Fitch ("Fitch"), deceased Plaintiff, appeals the district court's judgment affirming the Social Security Commissioner's ("Commissioner") denial of the application for disability benefits. Because we conclude that the Commissioner's decision is supported by substantial evidence and is consistent with applicable law, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-60549

## I.     FACTUAL AND PROCEDURAL HISTORY

On September 28, 2010, Fitch filed an application for disability insurance benefits under Title II of the Social Security Act.  That same day, Fitch also filed a Title XVI application for supplemental security income.  Fitch alleged that she was unable to work due to:  degenerative disc disease; problems with her spine, neck, and mid-back; and depression.  The alleged onset date of her disability was September 25, 2010.  The Commissioner denied her application.  Fitch then requested a hearing, and the ALJ conducted a hearing via video teleconference.  The ALJ subsequently issued a decision denying the application for Social Security benefits.

Fitch requested review by the Appeals Council.  On May 25, 2013, Fitch died in a car accident.  Michael Fitch, her surviving spouse, continued the appeal.  On February 5, 2014, the Appeals Council denied the request for review, which rendered the ALJ's decision the final decision of the Social Security Administration for purposes of judicial review.  42 U.S.C. § 405(g).

On February 21, 2014, the instant complaint was filed in federal district court.  On June 16, 2015, the magistrate judge denied Fitch's motion for summary judgment and granted the Commissioner's motion to affirm the decision of the Commissioner.  The district court accepted the magistrate's report and recommendation over Fitch's objections.  Fitch filed a timely notice of appeal.  Fitch also filed a motion to proceed *in forma pauperis* on appeal.  The district court denied the motion, finding that the appeal raised no arguable, nonfrivolous legal points.  Fitch subsequently moved this Court for leave to proceed *in forma pauperis* on appeal, and this Court denied the motion.[1]

---

[1] We note that Fitch's brief, which was filed on December 28, 2015, states that whether this Court should grant leave to procced *in forma pauperis* on appeal is an issue before us. However, as indicated above, on January 29, 2016, the motion was denied.

2

No. 15-60549

II.   ANALYSIS

A. Standard of Review

In examining the decision to deny social security benefits, our review is limited to determining whether the decision is supported by substantial evidence and whether proper legal standards were used to assess the evidence. *Brown v. Apfel,* 192 F.3d 492, 496 (5th Cir. 1999).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the findings are supported by substantial evidence, the findings are conclusive and will be affirmed. *Brown,* 192 F.3d at 496.  We may not reweigh the record evidence or substitute our judgment, even if the evidence preponderates against the decision.  *Id.*

B.  Disability

In 2006, Fitch was involved in a rollover vehicle wreck and suffered a broken neck and damage to her spine.  As a result of this accident, Fitch underwent an anterior cervical discectomy with fusion.  After the surgery, Fitch returned to work.  Fitch was treated for neck and back pain with prescription medications.  In 2011, Dr. Lisa Yazdani, a psychologist, diagnosed Fitch with bipolar disorder, depression (moderate to severe), and panic disorder.  Dr. Yazdani concluded that Fitch's "ability to interact with co-workers and receive supervision appears mildly to moderately diminished by her depression and her anxiety, and her concentration appears to be below average."   Dr. William Hand, a medical consultant, concluded that Fitch's "[s]ymptoms are disproportionate to the overall evidence and have partial credibility."  Likewise, Dr. Scallorn's notes provide that Fitch had only mild and moderate limitations "with no medical evidence to support marked or severe functional impairments from psychological factors."  Those notes also provide that Fitch was capable of appropriate interactions with coworkers and

3

No. 15-60549

supervisors on a basic level with moderate limitations when working directly with the general public. Those notes further provide that Fitch was capable of adapting to routine work changes and was able to complete a work week without excessive interference from psychologically based symptoms.

The ALJ found that Fitch was disabled. Specifically, the ALJ found that Fitch "has the following severe impairments: mild obesity, cervical disc disease with radiculopathy, degenerative disc disease of the lumbar spine, substance abuse, with depression and anxiety which are 'severe' while she is abusing substances." However, the ALJ also found that Fitch's substance abuse was a contributing factor material to the finding of disability. 20 C.F.R. § 404.1535(a). Further, the ALJ found that if Fitch discontinued the substance use, "she would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in" the relevant appendix. In other words, if Fitch discontinued the substance use, the ALJ found that she would have the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b).

The principal issue before us is whether there is substantial evidence supporting the Commissioner's determination that substance abuse was a contributing factor material to the determination of Fitch's disability. Fitch bore the burden of proving that her substance use was *not* a contributing factor material to her disability. *Brown,* 192 F.3d at 499 (explaining that the claimant "must introduce evidence that supports a finding in her favor that she would still be disabled by depression even if she stopped using drugs and alcohol"). Fitch contends that the ALJ erred in finding that the substance use contributed to Fitch's disability because the "medical evidence establishes that [Fitch] was not continuing to use alcohol in addition to her prescription drugs."

The evidence in the record demonstrated that Fitch admitted that she had "abused alcohol with binge-like patterns over the last 15 years." Fitch

4

admitted that she had previously "doubled up" on her pain medication at night and taken it while drinking alcohol. On two occasions subsequent to the 2006 car wreck, Fitch attempted suicide by overdosing on drugs and alcohol. The medical records demonstrate that Fitch was diagnosed as having a polysubstance dependence on prescription drugs and alcohol. During the second overdose, Fitch had an altercation with her husband and then shot her dogs with a rifle. After Fitch was brought to the hospital, the staff unsuccessfully attempted to transfer her to a psychiatric facility.

At the hearing before the ALJ on May 1, 2012, Fitch testified that she had been sober since September 2010. Although Fitch points to statements in the record in which she claimed to have quit drinking alcohol, there are conflicting statements in the record indicating that she continued to do so. On February 2, 2011, during the period of time Fitch claimed to be sober, Fitch reported to her psychologist that she was "currently going to treatment at Region 8 Mental Health Center" and that she had not used marijuana in over a year. Fitch initially stated that she did not drink alcohol, but then reported that "she sometimes drinks cocktails after work."[2] Subsequently, on March 17, 2011, which is also during the time period Fitch claimed to be sober, Dr. Glenda Scallorn, a medical consultant, wrote in her notes that Fitch was decreasing her alcohol intake. Thus, there is more than a mere scintilla of evidence supporting the ALJ's finding that Fitch's claim of sobriety was not credible.

---

[2] The reference to sometimes drinking alcohol "after work" is unclear because her last job at Pizza Hut had previously ended in September 2010. The record does not reveal what "work" Fitch was referencing. At the hearing, Fitch testified that she had been babysitting her friend's six-year old granddaughter overnight and getting her off to school in the mornings. In any event, the ALJ did not find credible Fitch's statement that she remained sober during the relevant time period.

No. 15-60549

"Conflicts in the evidence are for the Secretary and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).[3]

Moreover, the ALJ expressly found that without the substance use, Fitch would not have severe depression or anxiety that would qualify her as disabled. The ALJ concluded that if Fitch stopped substance use, she would have the residual functional capacity to perform light work, with certain exceptions such as the option to walk around briefly after sitting and being limited to performing only simple, routine, repetitive tasks. To support this conclusion, the ALJ relied on the fact that Fitch had reported in November 2010 that she "had very little to drink" and her medications were "doing really well for her. She has not had any significant problems." Additionally, during the hearing, Fitch testified that her prescribed medications "[s]omewhat relieved" her depression.

The ALJ found that when Fitch was abusing substances, she had moderate restriction in activities of daily living and marked difficulties in social functioning and maintaining concentration. The ALJ further found that the "record indicates that she is prone to altercations and maniac behavior when she abuses her medication and alcohol. Her history is positive for concentration difficulties and reported episodes of panic aggravated by her substance abuse." The ALJ also recognized that Fitch experienced episodes of decompensation when abusing substances. Indeed, as previously set forth, Fitch experienced suicidal ideations and exhibited violent behavior during

---

[3] With respect to Fitch's credibility, there is also conflicting evidence in the record regarding the reason Fitch quit her job at Pizza Hut. The intake papers from Region 8 Mental Health provides that Fitch reported she worked at Pizza Hut up until "last week when she was refused a raise." This statement indicates that Fitch quit her job for reasons other than her alleged disability. In contrast, in her statement taken in the office of Dr. Yazdani, Fitch stated that she quit working at the Pizza Hut because "she could not take medicine and work, and she was in too much pain to not take medication, so she had to stop working."

periods of substance abuse. The evidence in the record that Fitch was doing better when she took her medications as prescribed and was not abusing alcohol supports the ALJ's finding that her substance abuse was a contributing factor material to the determination of her disability. Fitch does not point to any expert opinion that she would remain disabled if she discontinued the substance abuse. Because there is substantial evidence to support the ALJ's determination, Fitch is not entitled to relief on this claim.

Fitch also contends that the ALJ's decision violated the "Treating Physician's Rule." This Court has explained that the "opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Perez v. Barnhart,* 415 F.3d 457, 465-66 (5th Cir. 2005) (internal quotations marks and citations omitted). More specifically, Fitch contends that the ALJ erred in ignoring the fact that her treating physicians diagnosed her with mental illness. We disagree. The ALJ expressly recognized that Fitch's medical records revealed that she had been treated for bipolar disorder, depression, and panic disorder. However, Fitch fails to identify any opinions from the treating physicians that her mental illness was so severe that it constituted a disability to work. Moreover, as discussed above, there is substantial evidence to support the ALJ's finding that her substance abuse was a contributing factor such that she is not considered to have a disability.

Fitch further contends that the ALJ ignored the evidence of pain and the debilitating effect of pain on Fitch's concentration. Again, we must disagree. In the residual functional capacity analysis, the ALJ referenced Fitch's complaints of pain and found her limited to performing only simple, routine, repetitive tasks. The ALJ set forth Fitch's specific complaints of pain in the opinion. The ALJ stated that she had "considered all of the claimant's alleged

symptoms and limitations including pain, side effects of medications and residual symptoms of alleged mental disorders." The ALJ further found that "[d]espite her allegations of severe symptoms, the physical exams have only shown generally mild to moderate restrictions. Treating doctors have not posited limitations more restrictive than the current residual functional capacity." Indeed, Fitch fails to point to any doctor's opinion that she suffered disabling back pain. *See Hames v. Heckler,* 707 F.2d 162, 166 (5th Cir. 1983) (explaining that the "record demonstrates an absence of objective medical evidence indicating that Plaintiff suffered such disabling back pain"). Accordingly, Fitch has not shown that the ALJ improperly failed to consider her evidence of pain.

Finally, Fitch contends that the district court erred in concluding that she had waived the argument that the ALJ improperly set forth boilerplate language in the opinion. We will assume for the purpose of this appeal that the issue is not waived and that it is properly before us. In *Bjornson v. Astrue,* 671 F.3d 640, 644 (7th Cir. 2012), the Seventh Circuit criticized the following language in an ALJ opinion, deeming it a "piece of opaque boilerplate."

> After careful consideration of the evidence, the undersigned [administrative law judge] finds that the claimant's medically determinable impairments would reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The Seventh Circuit stated that it appeared that the Commissioner had been relying on this "boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand,

almost without regard to whether the boilerplate paragraph has any relevance to the case." *Id.* at 645. Although the Seventh Circuit was very critical of the use of the boilerplate language, we do not interpret the opinion as granting relief based solely on the criticized language. Instead, we read the opinion as granting relief because the ALJ's opinion "failed to build a bridge between the medical evidence" and the conclusion that the claimant was not disabled. *Id.* at 649.

Contrary to Fitch's argument, the Seventh Circuit's opinion in *Bjornson* is not controlling and does not entitle her to relief. It is true that the above-quoted boilerplate in *Bjornson* is nearly identical to a paragraph in the instant ALJ opinion. However, the language in the case at bar differs in that it provides that Fitch's documented impairments could be expected to cause only "some" but not all of the alleged symptoms. Also, in the instant case, the ALJ added that the residual functional capacity assessment "would be applicable if she stopped the substance use" and that the "objective and otherwise credible evidence does not support limitation to the degree alleged." Thus, unlike in *Bjornson*, the ALJ tailored the language somewhat to fit the facts of the instant case. More importantly, as set forth previously, the ALJ properly considered the record evidence and explained its findings and conclusions. Thus, because there is substantial evidence in the record to sustain the ALJ's findings, Fitch is not entitled to relief.[4]

For the above reasons, the district court's judgment is AFFIRMED.

---

[4] Without further explication, Fitch also contends that the ALJ "failed to evaluate the underlying mental illness of the Plaintiff as a disabling element independent of but exercising a causative effect upon claimant Ellen Fitch's intermittent self medication through alcohol and prescription drugs." It is unclear, but it appears that Fitch is arguing that the ALJ did not properly consider her mental illness in making the determination of whether she had a disability. As set forth previously, we conclude that the ALJ properly considered Fitch's mental illness.